CAUSE NO. PD-0972-15

IN THE COURT OF CRIMINAL APPEALS FOR THE STATE OF TEXAS

BRANDON CHADWICK COE

PETITIONER

V.

THE STATE OF TEXAS

Petition in

Trial Cause Number 11-11-12628-CR from the 221ST District Court of Montgomery County, Texas and Cause Number 09-13-00409-CR, Cause Number 09-13-00410-CR in the Court of Appeals for the 9th District of Texas

**PETITION FOR DISCRETIONARY REVIEW**

Respectfully Submitted,

LAW OFFICE OF RUBEN FRANCO, JR.
Ruben Franco, Jr.
State Bar No. 24040928
406 N. Thompson, Suite 204
Conroe, Texas 77301
Telephone: (936) 441-0204
Facsimile: (936) 494-4316

ATTORNEY FOR PETITIONER
BRANDON CHADWICK COE

RECEIVED IN
COURT OF CRIMINAL APPEALS

September 14, 2015

ABEL ACOSTA, CLERK

# TABLE OF CONTENTS

| SUBJECT | PAGE |
|---|---|
| COVER SHEET | |
| TABLE OF CONTENTS | i |
| INDEX OF AUTHORITIES | ii-iv |
| PETITION FOR DISCRETIONARY REVIEW | 1-52 |
| STATEMENT REGARDING ORAL ARGUMENT | 1 |
| STATEMENT OF CASE | 2 |
| STATEMENT OF PROCEDURAL HISTORY | 3 |
| GROUNDS FOR REVIEW | 4-5 |
| REASON FOR REVIEW- ISSUE #1 | 6-15 |
| REASON FOR REVIEW- ISSUE #2 | 16-39 |
| REASON FOR REVIEW- ISSUE #3 | 40-48 |
| SUMMARY | 49-51 |
| PRAYER FOR RELIEF | 52 |
| CERTIFICATE OF SERVICE | 53 |
| APPENDIX: COPY OF OPINION OF COURT OF APPEALS | 54 |

# INDEX OF AUTHORITIES

## CASES

Page

*Aldridge v. State*, 342 S.W. 2d 102 (Tex. Crim. App. 1960)    42

*Alexander v. State*, 137 S.W. 3d 127, 130 (Tex. App.- Houston [1st Dist.] 2004)    46

*American Libraries Association v. Pataki*, 969 F. Supp. 160, 163 (S.D.N.Y. 1997)    13

*Ballard v. State*, 93 S.W. 3d 178, 181 (Tex. App.- Waco) 2000, no pet.    29

*Bowden v. State,* 628 S.W. 2d 787, 784 (Tex. Crim. App. 1982)    17

*Brady v. United States*, 397 U.S. 742 (1970)    13, 18, 37

*Brandenberg v. Ohio*, 395 U.S. 444, 89 S. Ct. 1827 (1969)    9

*Casey v. State*, 215 S.W. 3d 870, 879 (Tex. Crim. App. 2007)    47

*Crane v. Kentucky*, 476 U.S. 683, 690 (1986)    15

*Daggett v. State,* 187 S.W. 3d 444, 453 n.18 (Tex, Crim. App. 2005)    47

*Ex Parte Brown*, 205 S.W. 3d at 545 (Tex. Crim. App. 2006)    36

*Ex Parte Tuley*, 109 S.W. 3d at 390 (Tex. Crim. App. 2002)    36

*Ex Parte John Christopher Lo*, CCA. No. PD-1560-12, Delivered October 30, 2013    6,7,30,42,49

*Englund v. State*, 946 S.W. 2d 64 (Tex. Crim. App. 1997)    28-29

*Geick v. State*, 349 S,W, 3d 542 (Tex. Crim. App. 2011)    36

*Hollowell v. State*, 571 S.W. 2d 179, 180 (Tex. Crim. App. 1978)    44

*Holmes v. South Carolina*, 547 U.S. 319, 324 (2006)    15

*Hood v. State*, 944 S.W. 2d 743, 744 (Tex. App.- Amarillo) 1997, no. pet.    29

*Hooper v. State*, 214 S.W. 3d 9,13 (Tex. Crim. App. 2007)    45

*Jackson v. Virginia,* 443 U.S. 307, 319 (1979)    17

*Krajcovic v. State*, 393 S.W. 3d 282 (Tex. Crim. App. 2013)    36

*Kyles v. Whitley*, 514 U.S. 419, 442, 445-451 (1995)    43

*Ladd v. State*, 3 S.W. 3d 547, 567 (Tex. Crim. App. 1999)    29

*Mack v. State,* 859 S.W. 2d 526, 527 (Tex. App.- Houston [1st Dist.]) 1993, no pet.    17

*Martin v. State,* 173 S.W. 3d 463, 467-68 (Tex. Crim. App. 2005)    47

*Martinez v. State*, 867 S.W. 2d 30, 39 (Tex. Crim. App. 1993)    44

*Moff v. State,* 131 S.W. 3d 485, 489 (Tex. Crim. App. 2004)    16

*Owens v. State*, 827 S.W. 2d 911, 915 (Tex, Crim. App. 1992)    47

*Plante v. State*, 692 S.W. 2d 487, 491-92 (Tex. Crim. App 1985)    47

*Potier v. State*, CCA. No. PD-1542-99, Delivered February 13, 2002)    37

*Sanders v. State*, 604 S.W. 2d, 108 (Tex. Crim. App. 1980)    46

*Sharp v. State*, 707 S.W. 2d 611, (Tex. Crim. App. 1986). cert. denied, 488 U.S. 872 (1988)    17

*Strickler v. Greene*, 527 U.S. 263, 283, 119 S. Ct. 1936, 1949 (1999)    42

*U.S. v. Alvarez*, 132 S. Ct. 2537 (2012)    12

*United States v. Bennett*, 363 F. 3d 947, 953-54 (9th Cir. 2004)    30

*United States v. Stevens*, 130 S.Ct. 1577 (2010)  11-12

*United States v. Williams*, 553 U.S. 285 (2008)  8,9

*Williams v. State*, 958 S.W. 2d 186, 195 (Tex. Crim. App. 1997)  48

## STATUTES

Texas Penal Code § 33.021  6, 10-14, 49

Texas Penal Code § 33.021(b)  7

Texas Penal Code § 33.021(c)  7-9, 10, 12

Texas Penal Code § 33.021(d)  9, 10, 12

Texas Penal Code § 33.07  13

Texas Rules of Evidence 403  47-48

Texas Rules of Evidence 404 (b)  46-48

Texas Rules of Evidence 1002  29

Texas Rules of Evidence 1004  29

TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS OF TEXAS:

Brandon Chadwick Coe, Petitioner, petitions the Court to review the judgment affirming his conviction of Online Solicitation of a Minor and Attempted Sexual Contact, in Trial Cause Number 11-11-12628-CR from the 221st District Court of Montgomery County, Texas and Cause Number 09-13-00409-CR and 09-13-00410-CR in the Court of Appeals for the 9th District of Texas.

STATEMENT REGARDING ORAL ARGUMENT: Oral argument would be helpful if this Petition is granted because grounds for review include an argument that evidence presented in this case was insufficient to convict the Petitioner

1

## STATEMENT OF THE CASE:

The Petitioner was convicted, by a jury, of Online Solicitation of a Minor and Attempted Sexual Assault after a plea of not guilty. The punishment was assessed by the jury. Mr. Coe's punishment for Count I, on the charge of Online Solicitation of a Minor, was confinement in the Institutional Division of the Texas Department of Criminal Justice for twelve (12) years. 7RR88. With regards to Count II, on the charge of Attempted Sexual Assault, Mr. Coe was ordered to be confined in the Institutional Division of the Texas Department of Criminal Justice for ten (10) years. 7RR88. These convictions were affirmed by the Court of Appeals for the 9th District of Texas on June 24, 2015. Petitioner seeks review of those points of error that were affirmed.

## STATEMENT OF PROCEDURAL HISTORY:

The Court of Appeals rendered its decision affirming the Petitioner's convictions on June 24, 2015. A Motion for Rehearing was filed on July 1, 2015 and was denied on July 9, 2015. Petitioner filed a Motion to Extend Time to File a Petition for Discretionary Review and an extension was granted until September 9, 2015.

## GROUNDS FOR REVIEW

REASON FOR REVIEW- ISSUE/ARGUMENT (1):

The Court of Appeals erred in failing to give due consideration to the Petitioner's argument that Count 1 in the indictment is unconstitutional. Petitioner argues that on October 30, 2013, that the Texas Court of Criminal Appeals invalidated a 2005 statute regarding "Online Solicitation of a Minor". Petitioner believes that he is entitled to acquittal because he was indicted under a statute that has since been deemed unconstitutional.

REASON FOR REVIEW- ISSUE/ARGUMENT (2):

The Court of Appeals erred in failing to give due consideration to the Petitioner's claim that there was a lack of sufficient evidence as a matter of law to support the jury's verdict and in its' finding that the evidence was factually sufficient to support the jury's verdict. Petitioner believes the evidence does not support his conviction as charged.

4

## REASON FOR REVIEW- ISSUE/ARGUMENT (3):

The Court of Appeals erred when it failed to give due consideration to the argument that the trial court erred when it denied, in part, the motion in limine with regard to allowing E.B. to be referred to as a "victim". Petitioner also believes the Court of Appeals erred when it failed to give due consideration to the argument that the trial court should have excluded evidence that the State failed to timely produce in discovery and that the trial court acted in error by its allowance of prejudicial testimony as to an alleged extraneous act, over defense objection. Appellant believes these error amounts to significant harm and resulted in his conviction for the said offenses.

## I. REASON FOR REVIEW ISSUE (1):

A. The Court of Appeals erred in failing to give due consideration to the Petitioner's argument that Count 1 in the indictment is unconstitutional. Petitioner argues that on October 30, 2013, that the Texas Court of Criminal Appeals invalidated a 2005 statute regarding "Online Solicitation of a Minor". Petitioner believes that he is entitled to acquittal because he was indicted for the third degree level of the offense that has since been deemed unconstitutional. See *Ex Parte John Christopher Lo*, CCA No. PD-1560-12. Delivered October 30, 2013.

B. The reason the Court of Appeals judgment should be reviewed is that it appears the Court of Appeals may have been hasty in its methods to render an opinion as to reason for review issue/argument (1) raised by the Petitioner on direct appeal.

C. The reason the Court of Appeals judgment should be reviewed is that it appears to conflict with the holdings of other Court of Appeals judgment(s) on the same issues of law.

6

The issue is: (1) what constitutes a criminal offense under Texas Penal Code 33.021? (2) if application of *Lo* is appropriate in this case? What words did the Petitioner speak that were intended to result in imminent lawless action? (3) what constitutes sufficient evidence of attempted sexual assault? (4) when looking to the exact words of Coe, what words did HE use that solicited the alleged imminent lawless action (5) why is Coe not entitled to the protection afforded to United States citizens related to free speech?

D. In this case, the indictment specifies that this Petitioner was charged with "Online Solicitation of a Minor" as a third decree felony. See C.R. at 38. While defense counsel at trial did not specifically file a Motion to Quash the Indictment, they did object on a number of occasions to the specificity of the indictment and the relevance of evidence to the indictment. 4RR43-44, 4RR80, 4RR167-168. While the judgment in this case (see C.R. at 173) specifies the Petitioner was convicted of "Online Solicitation of a Minor" as a second degree felony that does not comport with the indictment herein. In *Lo*, the Texas Court of Criminal Appeals invalidated the state law specified in Texas Penal Code 33.021 (b) as indicted in this matter. See C.R. at 38. Texas Penal Code 33.021 (c) is not punishable as a

7

third degree felony. The third degree felony level applies to 33.021 (b) and that was, therefore, the intent as can be inferred from the State's indictment that specifically says this Petitioner was being charged with the third degree level of Online Solicitation of a minor.

E. In this case, the same constitutional provisions and safeguards as discussed in *Lo* would apply herein and this Court should reverse conviction for the same constitutional reasons.

F. If this Court finds that Coe's judgment forces an application of the law under Texas Penal Code 33.021 (c), then Petitioner would argue that the State should not be allowed to criminalize words that would have been exchanged as a mere fantasy, therefore a protected speech. Petitioner believes this case is an example of the State overreaching with its interpretations of Coe's language and the messages that he received to bait him into further fantasy communications. Both Krystalyn Jackson and Chris Smith were impersonating E.B. and creating a fantasy as the initiator of conversations with Coe. Coe should not lose his first amendment protections for his right of free speech when others were reaching out to

8

him to create this fantasy world in an effort to entice him. Coe told Chris Smith at the time of his arrest that he suspected this was a game with his ex-wife pulling the strings from the beginning. 5RR99-106.

G. Solicitation is a historically unprotected category of speech, but the category is narrowly drawn. See *U.S. v Williams,* 553 U.S. 285 (2008). Many long established criminal proscriptions—such as laws against conspiracy, incitement, and solicitation—criminalize speech…that is intended to induce or commence imminent illegal activities. *Brandenburg v. Ohio,* 395 U.S. 444 (1969) provides [T]he constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action.

H. Section 33.021(d) of the Texas Penal Code says: It is not a defense to prosecution under Subsection (c) that: …; (2) the actor did not intend for the meeting to occur; or (3) the actor was engaged in a fantasy at the time of commission of the offense. If the defendant did not intend for the meet

9

ing to occur and was engaged in a fantasy at the time of his words, then his words were not "directed to producing imminent lawless action," were not solicitation, and do not lose First Amendment protection. Sections 33.021(c) and (d) combined explicitly criminalize fantasy, forbidding speech—fantasy speech—that is protected by the First Amendment and would be therefore unconstitutional to make criminal.

I. Recently, the 9th Judicial District Court of Montgomery County, Texas (the same county as this instant case), under Cause number 14-05-05003-CR, issued a finding that Texas Penal Code Section 33.021 was, in its entirety, unconstitutional and the related charges against a different defendant were dismissed. Quoting from the writ filed in that action, "The statute under which he is charged, Section 33.021 of the Texas Penal Code, is unconstitutional for four reasons:

1. Section 33.021 is unconstitutionally overbroad on its face under the First Amendment because it is a content-based restriction that severely criminalizes a substantial amount of speech protected under the First Amendment.

2. Section 33.021 is unconstitutionally vague under the Fifth and Fourteenth Amendments because men of common intelligence must necessarily guess at its meaning and differ as to its application.

10

3.  Section 33.021 violates the Dormant Commerce Clause because it unduly burdens interstate commerce by attempting to place regulations on the entirety of the Internet.

4.  Section 33.021 is unconstitutional under the Sixth Amendment, Due Process Clause of the Fourteenth Amendment, and Due Course of Law under the Texas Constitution because it violates a defendant's ability to present a meaningful and complete defense because it negates the mens rea that fantasy and mistake of fact are not a defense.

Because Section 33.021 violates the First Amendment, the Fifth and Fourteenth Amendments, the Dormant Commerce Clause, the Due Process Clause and Due Course of Law under the Texas Constitution it is void."

Even incitement is speech—it is *unprotected* speech, but speech nonetheless. The correct approach, following *United States v. Stevens*, 130 S.Ct. 1577 (2010), is to ask whether the speech forbidden by Section 33.021(c) is within a historically unprotected category.

Section 33.021 is a content-based restriction on speech: speech that can be read to solicit is restricted, and speech that cannot be read as solicitative is not restricted.

Because Section 33.021 is a content-based restriction on speech, it is presumptively invalid. The State bears the burden of rebutting that presumption.

11

The Supreme Court's modern approach to First-Amendment law is a categorical inquiry: if the statute is a content-based restriction on speech, and the restricted speech does not fall into one of a few narrowly-defined categories of historically unprotected speech, the statute is void. *See U.S. v.* Stevens, 130 S.Ct. 1577 (2010); *U.S. v. Alvarez*, 132 S. Ct. 2537 (2012).

Fantasy is not incitement nor solicitation. So while section 33.021(c) apparently includes a *specific intent* to commit an illegal sexual act, which would make the speech unprotected, section 33.021(d)(2) and (3) explicitly eliminate that element. The speech forbidden by what remains of Section 33.021 is explicitly *not solicitation*. Section 33.021 requires the conviction of a defendant who speaks apparently solicitive words but does not intend that a crime be committed, whether because he does not believe that the object of his sexual attention, who "represents himself" to be a child, is in fact a child, or because he does not intend that a meeting occur. Such a defendant's speech is not unprotected solicitation, but the remains of Section 33.021 require his punishment, including his imprisonment.

12

If Section 33.021 were neither overbroad nor vague, it would violate the Dormant Commerce Clause: it unduly burdens interstate commerce by attempting to place regulations on the entirety of the Internet. This "negative aspect" of the Commerce Clause represents the notion that by specifically granting the United States Congress the power to legislate in this area, the Commerce Clause prohibits the states from legislation that unduly restricts interstate commerce.

In *American Libraries Association v. Pataki*, the U.S. District Court for the Southern District of New York struck down, as violative of the Dormant Commerce Clause, a law that made it a crime for an individual to use a computer to communicate sexual material harmful to minor. *American Libraries Association v. Pataki*, 969 F. Supp. 160, 163 (S.D.N.Y. 1997). The court held that the statute violated the negative aspect of the Commerce Clause because it unduly burdened interstate commerce in the traffic of goods, services, and ideas. *Id.* at 184. Likewise, it is impossible impossible to restrict the effects of Section 33.07 to conduct occurring within Texas. Section 33.07 seeks to regulate communications occurring wholly outside Texas; it imposes a burden on interstate commerce that is disproportionate to the local benefits it is likely to engender; and it subjects Internet users to inconsistent state obligations. *See id.*

13

Section 33.021 lacks a mens rea requirement and is, therefore, unconstitutional under the Sixth Amendment, Due Process Clause of the Fourteenth Amendment and Due Course of Law under the Texas Constitution. Section 33.021 fails to allow a defendant to raise a defense that he had a reasonable belief that the complaining witness was "17 years of age or older at the time of the alleged offense." The statute does not allow the accused to submit that he did not "intend" to solicit and is prevented from submitting any evidence that reveals his "intent." The statute prevents the accused from making an argument of fantasy, role-play, mistake of fact, or disbelief of the age of the person online. The statute prevents any defense as to intent.

The Sixth Amendment, Fourteenth Amendment and Texas Constitution are implicated because Section 33.021 violates the accused's rights to affirmatively raise a valid defense to explain why he was engaging in conversation that appeared to solicit a minor because it eliminates the ability to submit evidence that it was a fantasy or mistake of fact, and hence, the accused had no intention to solicit. [T]he [federal] constitution guarantees criminal defendants a meaningful opportunity to present a complete defense. This right is abridged by evidence rules that infringe upon a weighty interest of the accused and are arbitrary or

14

disproportionate to the purposes they are designed to serve." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006). When a court excludes evidence that is competent and reliable and that is critical to the defense it can risk violating the guarantee of fundamental fairness implicit in the due process clause. *Crane v. Kentucky*, 476 U.S. 683, 690 (1986).

J. Petitioner would argue that in light of the opinions issued and standards set by higher Courts in the aforementioned authorities, that this Court find Petitioner is entitled to acquittal because he was indicted for the third degree level of the offense that has since been deemed unconstitutional.

## II. REASON FOR REVIEW ISSUE (2):

A. The Court of Appeals erred in failing to give due consideration to the Petitioner's claim that there was a lack of sufficient evidence as a matter of law to support the jury's verdict and in its' finding that the evidence was factually insufficient to support the jury's verdict. Petitioner believes the evidence does not support his conviction as charged.

B. The reason the Court of Appeals judgment should be reviewed is that it appears the Court of Appeals may have been hasty in its methods to render an opinion as to the factual and legal sufficiency arguments raised by the Petitioner on direct appeal. Petitioner contends that the 9th Court of Appeals had a duty to consider all evidence admitted at trial in its sufficiency review and give whatever weight and probative value that it could rationally convey to the jury. See *Moff v. State*, 131 S.W. 3d 485, 489 (Tex. Crim. App. 2004).

C. The reason the Court of Appeals judgment should be reviewed is that it appears to conflict with the holdings of other Court of Appeals judgment(s) on the same issues of law.

The issue is: (1) what constitutes sufficient evidence of online solicitation of a minor? (2) what constitutes sufficient evidence of attempted sexual assault?

16

Petitioner argues when evaluating the sufficiency standard for evidence, the Higher Court must view items presented at trial and the reasonable inferences therefrom in the light most favorable to the prosecution. *Jackson v. Virginia,* 443 U.S. 307, 319 (1979), and determine whether the evidence was sufficient to support the conviction. The applicable question is whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt". *Jackson,* 443 U.S. at 319. It has long been held in the opinions of this Court that the trier of fact is the exclusive judge of the facts, the credibility of witnesses, and the weight to be given to their testimony, *see Sharp v. State,* 707 S.W. 2d 611, (Tex. Crim. App. 1986). cert. denied, 488 U.S. 872 (1988). The jury is the sole body to reconcile any conflicts in the evidence within the province of the jury and it is not subject to review by the appellate courts, *see Bowden v. State,* 628 S.W. 2d 787, 784 (Tex. Crim. App. 1982). To this extent, the appeal courts do not reanalyze the probity of an individual piece of evidence, *Mack v. State,* 859 S.W. 2d 526, 527 (Tex. App.- Houston [1ˢᵗ Dist.] 1993, no pet.

In this case, the State offered the testimony of four witnesses, namely Detective Chris Smith, Krystalyn Jackson, E.B. (the alleged victim herein), and Suzanna Schwem (former wife of Brandon Coe).

17

Out of the presence of the jury, and before called as part of the State's case in chief, Detective Chris Smith offered testimony relevant to *Brady* allegations made by the defense. Smith was the latent investigator assigned to this case. 3RR10. He testified that as part of his investigation herein that he had obtained the Petitioner's phone along with screen shots of a text message that were taken with some sort of camera device (3RR10) and that he did not take possession of the actual phone that those photographs depicted. 3RR11. Additionally, Smith stated that he had screen shots of a G-mail chat where he was personally communicating online with the Petitioner. 3RR12. The witness admitted there was a glitch or problem during the conversation where the computer stopped allowing the investigator to either take screen shots or stopped allowing him to save those screen shots and that a part of the conversation was lost. 3RR12-13. When Smith discovered the computer wasn't capturing the conversation, he testified that a prosecutor's iPad was used to snap photographs of the computer screen but that the device itself was lost on a Southwest Airlines flight and that Smith did not receive those photographs by email as he expected. 3RR14. Smith stated that the lost messages were a continuation of other conversation and a reference to the Petitioner having condoms with him. 3RR14.

18

Krystalyn Jackson testified that she is E.B.'s sister. 3RR51. E.B. is the alleged victim in this case. See C.R. at 38. Ms. Jackson stated that E.B. was sixteen years of age at the time of the alleged incidents made the basis of this case, said to have occurred on November 22, 2011, and that her seventeenth birthday was on November 30, 2011. Further, she indicated that she had been acquainted with the Petitioner's family for approximately fifteen years (3RR53) and that they were active in the same church. 3RR53. Questioning turned to whether E.B. and Krystalyn Jackson had Facebook accounts, Ms. Jackson testified that E.B.'s account was listed as adult named Emma Lee Delaine. 3RR56. She stated that, in August 2011, she logged into her sister's page, using her sister's password, with her sister's permission. 3RR58-59. Krystalyn admitted that she sent a group message to several people including Brandon Coe and waited for a reply (3RR60) and that she took a photograph of the screen to depict the message and replies. 3RR62. The witness testified that she received several replies to the bulk message including ones from Brandon Coe, whom she identified based on the name and profile photograph. 4RR33-38. The content of those replies included Krystalyn impersonating E.B. and the exchanges were that "E.B." was bored and at an apartment alone, Brandon offered to play Xbox, that "E.B." preferred dancing and sports and Brandon replying that she was too young for him to take her out dancing. 4RR37. She offered testimony that

19

she was using information that she knew were her sister's interests and that Brandon shared his cellular phone number for future contact. 4RR38. Ms. Jackson stated that she initiated text message conversation the next day by saying something along the lines of "Hey, it is E.B." and that she photographed the text message conversation and put them on a flash drive. 4RR42. Additionally, Krystalyn provided a photograph of E.B. to the Petitioner during this text message transaction. She stated that she provided the photograph at Coe's request after saying that it "wouldn't go any further". 4RR49-50. Ms. Jackson has known the Petitioner for years. 4RR53. As to the quality of the photographs and some being cut off, Ms. Jackson said that she didn't intentionally cut them off and was having trouble taking the photographs during the text conversation. 4RR53. Ms. Jackson testified that the age of her sister was acknowledged by Coe (4RR53) and she admitted to being the first person to mention sex during the conversation. 4RR55. Further, she testified that the Petitioner told her that she, posing as E.B., was "too young for him". 4RR57. She acknowledged that she was in Cleveland, Texas (a city within Liberty County and not Montgomery County) during this conversation. 4RR69. Additionally, she offered that Coe told her that he wanted to be E.B.'s "first" and that she took that to mean that Coe wanted E.B. to lose her virginity to him. 4RR62. Krystalyn, as E.B., told Coe that she had a boyfriend who had "touched

20

her" 4RR63. Jackson testified that Coe told her that "I am really hard right now" and Jackson replied, "I want to see". She said that Coe told her that he will take a photo and Jackson told him "please show me". 4RR70-71. The defense objected that this conversation is occurring via text message and not through the internet and Facebook and that it is therefore irrelevant to the indictment. 4RR80. Jackson testified that Coe sent a photo of male genitals (4RR81-82). Jackson told Coe that she was sixteen but almost seventeen and Coe replied "I thought you were seventeen". Jackson answered that she would be seventeen years of age in November but she didn't specify the date. 4RR95. Jackson then inquired as to whether Coe would stop talking to her now that he has learned her age and she testified that Coe replied that he won't stop talking to her but that he "doesn't want to do anything until she is seventeen". Jackson replied, "But if I have to wait, I guess I could. It sucks." Then Jackson offered information that she house sits and would be available in a couple of weeks. Coe reiterated that he could get in trouble before she is seventeen. 4RR95-96. Jackson testified that she communicated with Coe via text message and Facebook. 4RR102. The State offered photographs of the cell phone and Facebook conversation, taken by Jackson with a digital camera. The defense objected to improper predicate, alterations having been made to the digital photographs, and hearsay. 4RR103. Jackson testified that she didn't alter photographs and that the

21

camera transposed his name over the conversation and that it was not because of any effort on her part to alter the image. 4RR104-105. Krystalyn said that following the text conversation that she contacted her friend who was a deputy with the Cleveland Police Department, named John Shaver. Shaver later referred her to Chris Smith, who was an investigator for Montgomery County. 4RR110-111. Further, she said she met with Smith and provided him with her photographs of the alleged conversation. 4RR115-116. While communicating with Coe via Facebook, Jackson stated that she was in Spring, Texas (though that is not where E.B. resides). 4RR117. During cross examination, Jackson admitted that the conversation on Facebook "doesn't comport and follow normal conversation". 4RR122. She admitted that Coe's name is imprinted over Facebook communication and that was the fault of the screen and not her. 4RR122-124. Jackson admitted that in her affidavit given to Detective Shaver (with the Cleveland Police Department in Liberty County, Texas) that Suzanna Coe told her about E.B. and Brandon (4RR127) and that she failed to tell Montgomery County law enforcement of the connection to Suzanna Coe or provide them with other items on her phone or photographs thereof. 4RR130-131. Jackson stated that there was no Facebook record of any conversation between E.B. and Coe before August 11, 2011 when she began acting as E.B. 4RR133. Ms. Jackson testified that the age of her sister was acknowledged by

22

Coe (4RR53) and *she admitted* to being the first person to mention sex during the conversation. 4RR55. Further, she testified that the Appellant told her that she, posing as E.B., was "too young for him". 4RR57. Krystalyn sent a photograph of a female laying by a swimming pool *that wasn't requested by the Appellant* and said to Coe "I kinda took (this) for you". 4RR57. *She then followed by telling Appellant* "she would like to see what he has". 4RR59. Additionally, *she admitted that E.B. was not present* during texts between Jackson and Coe. 4RR138. Jackson testified that her employment history included work in photography and that her work was advertised in the media. 4RR143.

Chris Smith was recalled after Krystalyn Jackson. He stated that he works for the Montgomery County District Attorney's office as chief investigator. 4RR155. The State offered snapshots of mail communications between Smith (posing as E.B.) and the Petitioner and the defense objected stating that the Gmail exhibits were irrelevant because the indictment specified Facebook. The court overruled and admitted exhibits. 4RR167-168. *Smith testified that he started communications* with Coe, posing as E.B., on October 14, 2011 (4RR169) and that *he continued on* with conversation that had occurred between Jackson and Coe. 4RR176. *Smith testified that he picked up on earlier conversation about sex* (4RR193) though Coe said he wanted to talk by phone. 4RR194. Further, Smith admitted that there could've been exculpatory evidence within

23

the missing snapshots taken on the (allegedly) lost iPad of the Assistant District Attorney who had loaned Smith his iPad during the investigation herein. He acknowledged the defense wasn't provided with the images taken on the iPad. 5RR45. Smith said a second conversation occurred on October 20, 2011. 4RR177. Smith said that Coe invited Brown to his house to watch movies. 4RR181. The next conversation occurred on November 22, 2011. The defense launched a series of objections, including: that the photograph screen shots were not admissible under the best evidence rule; that Gmail is not Facebook; that the State had laid improper predicate; that the related testimony was inadmissible under the hearsay rule; and that the exhibit lacked completeness. The Court overruled all the objections. 4RR185. Coe asked about Brown's birthday and the response was "next Wednesday". 4RR195. Coe asked when she was going to her sister's house and was told that she was housesitting that evening and that he was invited over. Smith commented to Coe, posing as E.B., "I want to have sex with you and for you to be my first". 4RR196-199. Coe mentioned he was concerned because E.B. wasn't seventeen and that he would come over so they could talk. 4RR204. He was provided an address and began driving over to meet Smith posing as E.B. Smith admitted that he asked Coe, "if we have sex, how would anyone know?" 4RR205. Smith testified that Coe sounded hesitant (4RR212) and that he asked Smith, posing as E.B., to confirm the name of

24

Krystalyn Jackson's boyfriend. Smith said that Coe pointed out to him that the address she gave isn't David Webb's address and that it is a different address. He said he was calling the listed house telephone number for David Webb's residence and no one was answering the call. 4RR223. At that point, Smith stated that Coe began saying he believed this all to be a set up because his ex-wife has been playing with him and that he has thought from the beginning this was all a set up and that E.B. not answering the phone confirmed his suspicions. RR227-228. A discussion about when Coe would arrive occurred and Coe said he had arrived and pulled into the cul-de-sac. 4RR236-237. Coe exited the car and approached the house. Soon after, officers took him to the ground. 5RR10-11. Smith took into evidence six lifestyle condoms found in the front pocket of Coe, a cell phone, wallet, and keys. 5RR13. Smith inventoried the car and recovered a laptop, one more condom, and a prescription bottle for Cialis. 5RR15. Smith discussed glitches with the computer that were previously admitted in the pre-trial hearing. 5RR27. He admitted he didn't interview Stephanie Hurst between the dates of November 23, 2011 to June 19, 2013 to confirm or deny the account of Petitioner. 5RR28. Stephanie Hurst had been identified by Coe as his girlfriend, that she was aware of his whereabouts on the evening of the alleged offense, and that they planned to meet later that evening. Coe anticipated he and Hurst would be having sex, thus the need for the condoms and

25

Cialis. Smith admitted that prior to the events of November 22, 2011, that Suzanna Schwem (Coe) had delivered four (4) hard drives to the Montgomery County Sheriff on June 1, 2011 and another twenty-seven (27) hard drives on a subsequent occasion (5RR23) and that there was nothing of evidentiary value on all those drives. Smith stated that he executed a search warrant and that twenty-two (22) items were seized from Coe's home and that nothing of evidentiary value was found on those items. 5RR33-34. Smith testified there were gaps in downloading the chats and that that would have been evident and perhaps considered exculpatory had the defense been given access to the same as part of discovery herein. 5RR45.

A Bill of Review was offered on this witness. 5RR99. Smith testified that case file numbers began on July 14, 2011. Smith went over the conversation with Coe that occurred on November 22, 2011 when Smith (posing as E.B.) tells Coe, "I've been doing some thinking about sex with you". Coe's response, according to Smith, was "I would rather talk on the phone" and that Coe said to Smith (posing as E.B.) that he believed this is a set up and has thought that since the beginning. 5RR99-106. Smith admits that Coe detailed that he believed it was his wife trying to set him up and that he went to location to confront his wife. 5RR100-106. Judge rules that officer report can go into the record

26

and that Coe should take the stand to put in the statements that he made to Smith that night. 5RR109.

E.B. is the alleged victim in this case and was the State's third witness. She took the stand and identified that she was eighteen years of age at the time of trial and that her birthday is November 30. 5RR51. She identified her parents, said she has a brother and sister, and that in October 2011 she was living in Cleveland, Texas. 5RR52-55. E.B. stated that she attended Cornerstone Church in Cleveland and that the Petitioner had liked a photo and commented on another since she became Facebook friends with him. She said that the "like" and comment made her feel awkward and she told her sister, Krystalyn, about it. 5RR62. Further, she testified that Coe made her uncomfortable on one occasion at the church (5RR69-70) but that she couldn't have been too uncomfortable because she accepted him as a Facebook friend. 5RR72. E.B. stated that Coe never did anything inappropriate to her, that he helped she and her mom move to an apartment, that she and her mom had lunch at the Coe home, and reiterated that Coe never tried anything. 5RR72-73.

Suzanna Schwem (Coe) was married to the Petitioner, Brandon Coe. She testified they were almost married 5 years, they divorced January 30, 2012, and that there was no direct communication between them from August 11, 2011 to November 23, 2011.

27

5RR79-80. Ms. Schwem testified that she did not direct Krystalyn Jackson to communicate with Brandon Coe and that she didn't have involvement in this case. 5RR81. Despite defense objection and defense desire to further probe into Ms. Schwem, the Court ruled that no such direct or cross examination would occur. 5RR85-86. Defense offered a Bill of Review for this witness. Schwem admitted that she set up the online persona of Nikki69Marie, posing as a sixteen year old, to try and lure Brandon Coe into communication with her. 5RR87-91. She admitted she turned over thirty-one (31) hard drives in June 2011 to law enforcement and subsequently learned there was nothing of evidentiary value on them. 5RR94.

Petitioner makes the following argument as to factual insufficiency:

1. There was a failure by law enforcement to take possession of the cell phone of Krystalyn Jackson after she first made allegations against this Petitioner. Defense counsel made a number of objections to Ms. Jackson's photographs of the alleged text conversation being admitted at trial in the spirit of the best evidence rule within Rules 1002 and 1004 of the Texas Rules of Evidence. The best evidence rule was created to minimize the harmful effect of human error. Secondary evidence is susceptible to both human and mechanical error and that production of the original evidence increases the probability for accuracy and promotes the prevention of fraud. See *Englund v. State,* 946

28

S.W. 2d 64 (Tex. Crim. App. 1997), *Ballard v. State,* 93 S.W. 3d 178, 181 (Tex. App.-Waco) 2000, no pet., *Hood v. State,* 944 S.W. 2d 743, 747 (Tex. App.- Amarillo) 1997, no pet. It has been established that digital photographs are admissible if the original source is lost, unobtainable, cannot be found in Texas, in the possession of an opponent who fails to produce it, or offered for a collateral purpose. Tex. Rules of Evidence 1002, 1004. The defense argued for authentication and the judge ruled that it "seems to be authentic". 3RR63. Law enforcement could have and should have seized Krystalyn Jackson's phone, in the interest of justice, and performed a cell phone dump on the phone to authenticate the digital photographs. A modern day interpretation of text messaging was explained in *Ladd v. State,* 3 S.W. 3d 547 (Tex. Crim. App. 1999). Text messages are considered writing, and attaches the standards set forth with writings, because the messages consist of letters, words, or numbers set down by mechanical or electronic recording. The cell phone of Krystalyn Jackson wasn't lost, it was obtainable, it was within Texas, was in the possession of a complaining witness who could have produced it, and was alleged to contain critical evidence offered as to a possible criminal act. Krystalyn Jackson provided testimony that her cellular phone was available. It was not collateral in nature. A duplicate is admissible to the extent of an original if authenticity is accepted and not questioned, or when unfairness would result. Authenticity was

29

questioned via numerous cited objections an0d the only unfairness was to this Petitioner who is now serving prison time for an offense he believes himself to be innocent of and that the evidence is insufficient to support. Record reflects that three different time stamps appear on items produced by the State to the defense within the records suggesting that modifications occurred at some point from the time the photographs were originally taken. As to the photographs of the text message conversation, Krystalyn Jackson offers more of her digital photographs. The Judge erred by failing to hold the State in abeyance of TRE 1002 and 1004. The trial court shouldn't have admitted secondary evidence. *U.S. v. Bennett,* 363 F. 3d 947, 953—54 (9th Cir. 2004).

2. The indictment herein limited itself to Facebook/online services. The charging instrument makes no mention of text messages yet there is nothing sexually explicit about this Defendant's alleged conduct on Facebook. If this Court finds that online services is extended to G-chat and finds the trial judge did not err in admitting those records then Petitioner would raise that the State bore a direct evidentiary burden to show those communications were sexually explicit within themselves. Petitioner argued they are not. Petitioner asks the Court to hold them to the standards utilized in *Lo.*

In an effort to simplify the Petitioner's allegations, the following detail is provided for the Facebook communication (the online service specified in the indictment)

30

between Brandon Coe and Krystalyn Jackson, posing as E.B. The Petitioner believes some alteration was made of so the photographs created by Krystalyn Jackson for the conversation, but if this Court accepts the rendition of Ms. Jackson, then the defense adamantly objects to the authenticity (4RR33-36) and would argue this conversation does not rise to the level of being sexually explicit as required as an element to the charge:

Comments made by Brandon Coe on Facebook to Krystalyn Jackson posing as E.B., as elicited by the State attorney during testimony-

A (by Jackson): Quick characters, which means a smiley face with a tongue sticking out. And "What do you think it means", in response to the question that I asked.

Q (from State to Jackson): -- What was the question that you asked?

A: "Ha, Ha, Ha. What does that mean?"

Q: Okay. So then on 260, how do you respond to that?

A: "Laugh out loud. I don't know. Hehehe."

Q: And then what is Brandon Coe's responses to you?

A: "What are you up to, cutie?"

Q: So how do you respond?

A: "Nothing chilling at home. So bored."

31

Q: Now it looks like in the next message you send you talk about moving into an apartment…

A: Correct.

Q: What is Brandon's response?

A: "Sorry. I wish I could help. What apartment?"

Q: And then your response to that:

A: Aw. Thanks. The ghetto Kirbywood ones."

Q: Okay. And then what does he say in response to telling him where you live?

A: "Well, if you weren't so far away, I'd come and play Xbox with you or something."

Q: All right. What is his response? I'm sorry. What is your response?

A: "Laugh out loud. I do not have an Xbox. That would be cool, but I don't even know how to play that. Laugh out loud. I like dancing and sports."

Q: And he responds how?

A: "Well you are a little too young for me to take out dancing. Laugh out loud."

Q: And your response to that?

32

A; "Laugh out loud. Whatever. Laugh out loud. I have never been club dancing, but I like hip hop and choreography type stuff. And I want to be a pro football cheerleader type dancer."

Q: Okay. And his response?

A: "Cool text me if you want. I am getting off here."

Q: All right. And then you respond how?

A: "Okay. Cool. What is your number?"

Q: And what is his response?

A: "832-407-4469"

Q: Okay. And on the bottom of 260, there was that lengthy message that you sent a couple days later, you were saying?

A: "Sorry I haven't responded or been able to text. I dropped my phone in the pool."

While G-mail was not specified in the indictment, if this Court accepts the chats as an online service provider, then the Petitioner believes the communications do not satisfy the elements of producing an imminent lawless action.

This scrutiny should be applied to the conversations in question. It is not enough to say that Coe was having online conversations with E.B. or anyone posing as her. E.B.

33

and Coe had known each other a long time, attended the same church, had family friends in common, were Facebook friends, and Coe along with his father had even helped with a move to an apartment for she and her mother. The State should be held to the standards enunciated in the law and not merely be allowed to speculate what they thought Coe was meaning by any communication.

Smith testified there were technical glitches in the recording and preserving of snapshots of that conversation. He admitted that five hours of conversation is missing in the record. In the spirit of completeness and preservation of potentially exculpable evidence, this Petitioner was disadvantaged by the glitches given that part of the communications, as admitted by Smith, included Mr. Coe making the statement that he believed this was all a "set up", that his ex-wife had been plotting to cause him harm, and that he believed this to be the case with this situation. 4RR227-230.

3. The Facebook conversation-

Defense elicited testimony that the records of the conversation were modified and that Coe's name was transposed over the conversation and not in the normal appearance for Facebook. 4RR122-124. Krystalyn Jackson started the conversation. She sent a group message to several persons, one of whom was the Petitioner, and more than just the Petitioner replied.

34

4. Alternate Defense Theory that this was a "Set Up"-

Krystalyn Jackson admitted that she spoke to Suzanna Schwem (Coe) on average two times per week during the pendency of investigation herein 4RR114-115. She did tell Investigator Smith of her personal connection to Suzanna and she told Detective Shaver with Cleveland Police Department that she received and acted on information from Suzanna Schwem (Coe) with this case. 4RR127. Ms Schwem (Coe) admitted that she had turned over thirty-one (31) hard drives to law enforcement in the month following her separation from the complainant. She also admitted to setting up the online persona of Nikki69Marie to lure Mr. Coe into communicating with the fictitious sixteen year old. During this trial, the Judge limited the scope of questioning against Ms. Schwem (Coe) so the jury was provided very limited information into the scheming of Ms. Schwem (Coe) though this was a vital, alternative defense for this Petitioner. The judge as gatekeeper kept this potentially viable information from the jury. The Petitioner further, advised Investigator Smith, at the time of his arrest, that he believed that his estranged wife was the directing this initiative against him from the beginning. After all, she had filed a complaint against him in June 2011 (after separation in late May 2011), Ms. Jackson admitted to Detective Shaver that Ms. Schwem (Coe) had provided her with information on Mr. Coe and a potential, alleged interest in E.B. Then, Ms. Schwem (Coe)

35

turned over more hard drives to authorities. She and Ms. Jackson stay in contact and "become closer" as this case progressed (according to the record of Ms. Jackson's testimony). Yet Investigator Smith decided not to interview the witness that the Petitioner suggested (Stephanie Hurst) who had direct knowledge as to the Petitioner's intent as he drove to the home to allegedly meet up with E.B. on the evening of November 22, 2011.

Petitioner believes this evidence is clear and convincing and that the jury would not have been inclined to convict had the alternate theory have been provided. Further, Petitioner believes that if the jury would have been privy to the evidence of the connection of Suzanna Schwem (Coe) to this prosecution that the jury would not have convicted him in light of that evidence. Petitioner argues that the judge had a responsibility to allow defense theories and that trial counsel offered compelling opinions to the Court. See *Krajcovic v. State,* 393 S.W. 3d 282 (2013); *Geick v. State.* 349 S.W. 3d 542 (Tex. Crim. App. 2011). 6RR5,13. The evidence Petitioner offered was not newly discovered. Ms. Schwem could have been compelled to answer questions by defense trial counsel and she was available had the judge allowed the testimony. Standards for admissibility are established in *Ex Parte Brown,* 205 S.W. 3d at 545; *see also Ex Parte Tuley,* 109 S.W. 3d at 390.

36

Petitioner believes the Court should have let the trier of fact (jury) hear the testimony of Schwem offered in the Bill of Review. The jury should have been allowed to consider all the available evidence as to Schwem's motive as a woman scorned , about Schwem's prior attempt to lure him while she posed as a 16 year old, and the judge should have let the jury decide how much weight to give all available evidence . The evidence had more relevance than just to a matter of impeaching Schwem as she offered very little direct evidence as to the case. The purpose was to advance an alternate defense theory and the judge's limitations were not reasonable as the limits denied Petitioner a right to a fair trial and the right to present a defense. The Petitioner would argue that any attempt by the State to offer *Potier* for consideration is inappropriate because the evidence was vital to the defense, and the exclusion prevented a defense offering that Coe was pursuing leads to try and draw to a conclusion the continued harassment of him by Schwem and not participating in the conduct as charged. In this case, the judge was not the trier of fact and the judge should have deferred to the jury to let the panel decide the weight to give Schwem's testimony as it related to a defense theory.

The alleged victim in this case testified that while she was made to feel uncomfortable after some discussions with her sister, that this Petitioner never did anything inappropriate with her, that he and his father helped she and her mother move,

37

that she had lunch with his family at his home, that she attended church with him. She testified that he did not act inappropriate in her presence. Her sister, Krystalyn, assumed her identity and pursued communication through Facebook. Krystalyn Jackson was the one who first mentioned sex. She was the one who first mentioned that "E.B." wanted Brandon Coe to be her "first". She was the one who kept the communications in progress. Brandon Coe did not initiate sexually explicit conversation on any occasion with E.B. or anyone posing as her. Krystalyn Jackson and Chris Smith initiated the contact with Brandon Coe.

Petitioner did not initiate communication with E.B. The facts are clear in the Reporter's Record. Coe did not communicate with 16 year old E.B. prior to Jackson's use of E.B.'s password to solicit Coe herself into such communication. Jackson admitted she was the initiator. Jackson admitted that she started the sex talk while posing as E.B. She admitted to sending the photo to Coe. She admitted to soliciting Coe for photo of his private area. Coe responded to conversations initiated by Jackson and Smith, posing as E.B., because he believed it was his wife posing as E.B. Coe told Smith of his suspicions (about Schwem) during his arrest and he offered up a witness to validate his statements. Smith opted not to contact that potential witness for an interview. Appellant would argue that "liking" a photo or replying "cute" to a Facebook photo on a profile of an Emma Lee

Delaine, who claims to be an adult, does not amount to communication. See RR 5:19. Coe owed no obligation to Smith to answer his questions and, instead of standing behind certain amendment protections, offered information that the condoms and prescription for Cialis were for use with his adult girlfriend not E.B. as alleged. Coe believed that Suzanna Schwem was behind this impersonation and he went to the address to unveil this theory not to engage in sexual acts with E.B. The judge limited his ability to put all of the relevant facts before the jury so that they could be the true trier of fact and consider all available evidence, including the prior attempts by Schwem to trap Coe into some type of criminal prosecution because of her desire to retaliate against him for their failed relationship. Coe continued to express to Smith, posing as E.B., that he thought something was awry when the address provided did not belong to the person that was said to live at the residence.

Petitioner would argue that in light of the opinions issued and standards set by higher Courts in the aforementioned authorities, that this Court finds that the evidence against this Petitioner is insufficient to support the verdict.

## III. REASON FOR REVIEW ISSUE (3):

A. The Court of Appeals erred when it failed to give due consideration to the argument that the trial court erred when it denied, in part, the motion in limine with regard to allowing E.B. to be referred to as a "victim". Petitioner also believes the Court of Appeals erred when it failed to carefully evaluate whether the trial court should have excluded evidence that the State failed to timely produce in discovery. Further, that the Court of Appeals failed to consider that the trial court may have acted in error by its allowance of prejudicial testimony as to an alleged extraneous act, over defense objection. Petitioner believes these error amounts to significant harm and resulted in his conviction for the said offenses.

B. The reason the Court of Appeals judgment should be reviewed is that it appears the Court of Appeals may have been hasty in its methods to render an opinion as to the Issue/Argument number (3) raised by the Petitioner on direct appeal.

C. The defense made a number of objections in the trial.

D. The reason the Court of Appeals judgment should be reviewed is that it appears to conflict with the holdings of other Court of Appeals judgment(s) on the same issues of law.

40

The issue is: (1) did the State's reference to E.B. as a "victim" amount to harmful error? (2) did the trial court abuse its discretion by failing to exclude evidence that was turned over to the defense within ten days of trial? (3) did the trial court's failure to exclude the questionable evidence deny the Petitioner his right to a fair trial? (4) did the trial court allow the jury to become unduly prejudiced by the admission of an unfounded, alleged extraneous act of the Petitioner?

E. As to the reference to E.B. as a "victim", Petitioner believes it was most improper because the State failed to prove that E.B. was the "victim". Jackson and Smith impersonated E.B. and the original Facebook profile allegedly belonged to an adult named Emma Lee Delaine. Petitioner believes the inference was prejudicial as it is his contention that there was not a "victim" at all and that the reference created an inherent harm. Petitioner believes it was inflammatory and that the judge should have disallowed the reference and that it amounted to harmful error herein.

The defense's Motion in Limine was denied, in part, by Judge during a hearing on the same- 2RR10. The State was allowed to refer to E.B. as a "victim" despite defense objection that such reference assumed that a crime has occurred.

Petitioner believes the State being allowed to refer to E.B. as a victim was a judicial determination that a crime had occurred. Until the time of conviction, E.B.

41

was an alleged victim and the Judge allowing her to be referred to as a victim only furthered a message to the jury that there was indeed a crime when that was a fact for the jury to determine. See *Aldridge v. State,* 342 S.W. 2d, 104 (Tex. Crim. App. 1960).

F. As to the admission of evidence disclosed shortly before the start of trial, Petitioner believes the Court should have excluded the same. State witness, Detective Chris Smith admitted that evidence related to part of the chats was lost/missing and he went so far as to say that it could have included exculpatory evidence. The incomplete evidence was argued at length, prior to the onset of trial, as the Court was informed that some items were turned over by the State on the Friday preceding trial on Monday. While the State makes reference to the defense trial counsel remark that they weren't "saying that prosecutors" were hiding things on purpose (R.R. 3:29-30), that does not exclude the possibility that law enforcement were the ones inhibiting disclosure. The Supreme Court in *Strickler v. Greene,* 527 U.S. 263, 283, 119 S. Ct. 1936, 1949 (1999), explicitly held that a prosecutor's "open file" discovery policy in no way substitutes for or diminishes the State's obligation to turn over all exculpatory evidence pursuant to *Brady.* In *Brady,* it was established that the prosecution must disclose any information or material that

42

is material, relevant to guilt or punishment, favorable to the accused, and within the constructive knowledge or possession of anyone acting on behalf of the State. Due process also requires the disclosure of evidence that provides grounds for the defense to attack the reliability, thoroughness, and good faith of the police investigation, to impeach the credibility of the state's witnesses, or to bolster the defense case against prosecutorial attacks. *See Kyles v. Whitley,* 514 U.S. 419, 442, 445-451 (1995). In *Kyles,* the Supreme Court explicitly said that the individual prosecutor has an affirmative duty to learn of any favorable evidence known to other people and agencies acting on behalf of the government, including law enforcement. The inconsistencies in Smith's photographs of the chats and the transposed information on Jackson's photographs of the Facebook conversation give rise to a heightened need for this prosecutor to fulfill the affirmative duty to disclose evidence in a timely manner and gives rise to the allegation that the State willfully denied this Petitioner a right to fair trial and created harmful error. The defense objected to the timing of the State's disclosure of items to be turned over as part of the Court's standing discovery order and that such disclosure occurred on Friday before trial commenced rather than ten days prior so that defense could be adequately prepared. 3RR31.

Petitioner advances that the Judge erred by allowing the State to use evidence that was propounded to the defense, late afternoon, on the Friday before the trial began. Defense counsel complained and objected that they had not been provided with discovery in a timely manner and that it precluded a proper preparation for trial. 2RR6-7. Additionally, the judge instructed the State to bring anything they hadn't provided for the defense to review, including a phone to be powered up, and that did not provide the Petitioner with adequate time to be able to contact any necessary experts or disclose the same. 3RR37. Evidence willfully withheld from disclosure under a discovery order should be excluded. *Hollowell v. State*, 571 S.W. 2d 179, 180 (Tex. Crim. App. 1978). When reviewing a trial court's decision to admit or exclude evidence, an appellate court must determine whether the judge's decision was an abuse of discretion. *Martinez v. State*, 867 S.W. 2d 30, 39 (Tex. Crim. App. 1993).

G. The defense had a running objection to the testimony of Chris Smith, offered in cross examination when he served as a defense witness on matters related to any other alleged extraneous acts of this Petitioner. 5RR172.

When alleged extraneous acts become admissible during the guilt-innocence phase, extremely prejudicial information becomes published to the jury about the

44

Defendant. Petitioner believes it was misleading to the jury to infer that Brandon Coe had other alleged communications occurring with underage females when Chris Smith testified that Coe was also allegedly communicating with an unknown fifteen year old at or about the same time as his own communications with the Petitioner. There was not authentication of the alleged communication. The defense vehemently objected to the same as hearsay and that its prejudicial value outweighed any probative value. The trial court abused its discretion by allowing such inflammatory testimony by the lead investigator.

This conclusion is underpinned by the holdings in *Hooper v. State*, 214 S.W. 3d 9,13 (Tex. Crim. App. 2007). However, the <u>Hooper</u> case, supra, is distinguishable from the instant case because the victim was a game warden and the case involved an actual criminal act and the inferences supported the elements of such. There has never been a criminal prosecution related to the unknown fifteen year old. Additionally, there was testimony as part of a bill of review from Suzanna Schwem (Coe), the ex-wife of Brandon Coe, Petitioner. Ms. Schwem admitted to setting up online personas for underage girls in an attempt to lure Mr. Coe into communications with her. Petitioner contends that the evidence in this

45

case is substantially the same as the *Sanders v. State*, 604 S.W. 2d, 108 (Tex. Crim. App. 1980) and *Alexander v. State,* 137 S.W. 3d 127 (Tex. App.- Houston [1st District] 2004).

At this level, Petitioner would argue that trial counsel made an objection to and complained of the state's intent to introduce the extraneous conduct in an effort to preclude the testimony of Smith. Trial counsel mentioned it was more prejudicial than probative. (R.R. 5:171). Trial counsel requested and was granted a "running objection" after the Court quickly moved things along and wanted no other argument on the point. (R.R. 5:171). The allowed testimony was an unsubstantiated claim as no specifics were provided to the alleged minor, no name, no alleged victim produced, nothing to give the "evidence" more value so as to make the weight more substantial than the prejudicial impact of the same. Petitioner would argue that the inference alluded to by Smith lacked substance and was prejudicial and inflammatory. Petitioner would urge the error were harmful and did affect Petitioner's rights.

**Texas Rule 404 (b)-** For evidence of Coe's alleged extraneous acts to be permitted at trial, the State was required to meet the requirements of Rule 404 (b) or it must rebut a defense theory in order to be admissible. The Court indicated

46

its belief that defense attorney Bergman opened the door to this inflammatory testimony when she asked if Coe had done anything else that was inappropriate to the knowledge of Smith. The trial court erred when it failed to give the defense an opportunity to do an independent defense investigation into this matter to identify the alleged fifteen year old so as to have evidence to combat the state on challenging the existence of a bad act at all and to be prepared to defend against these allegations so as to minimize the prejudicial impact on the jury.

This conclusion is underpinned by the holdings in *Casey v. State*, 215 S.W. 3d 870, 879 (Tex. Crim. App. 2007); *Owens v. State*, 827 S.W. 2d 911, 915 (Tex, Crim. App. 1992); *Martin v. State*, 173 S.W. 3d 463, 467-68 (Tex. Crim. App. 2005); *Daggett v. State*, 187 S.W. 3d 444, 453 n.18 (Tex, Crim. App. 2005); and *Plante v. State*, 692 S.W. 2d 487, 491-92 (Tex. Crim. App 1985).

**Texas Rule 403-** Finally, for evidence of Coe's extraneous offenses to be permitted at trial, the trial court must assess the evidence's probative value must substantially outweigh the unfair prejudice to the Petitioner. Coe believes this error by the judge amounted to reversible error as it prejudiced the jury and

47

ensured a guilty verdict against this Petitioner. This conclusion is underpinned by the holdings in *Williams v. State,* 958 S.W. 2d 186, 195 (Tex. Crim. App. 1997).

**H.** Appellant would argue that in light of the opinions issued and standards set by higher Courts in the aforementioned authorities, that this Court finds the unfounded, alleged extraneous act should have been inadmissible on the basis that its prejudicial effect outweighed any probative value as required by Texas Rules of Evidence 403 and that it failed to satisfy the standards in Rule 404 (b).

## SUMMARY

A. Petitioner believes that the Court of Appeals erred by failing to reverse the conviction and acquit him because he was indicted for the third degree level of the offense that has since been deemed unconstitutional.

Petitioner requests review of the following: The Court of Appeals application of the law on the issue of (1) what constitutes a criminal offense under Texas Penal Code 33.021? (2) if application of *Lo* is appropriate in this case? (3) what words did the Petitioner speak that were intended to result in imminent lawless action? (4) what constitutes sufficient evidence of attempted sexual assault? (5) when looking to the exact words of Coe, what words did he use that solicited the alleged imminent lawless action (6) why is Coe not entitled to the protection afforded to United States citizens related to free speech?

B. Petitioner believes the totality of the above contentions significantly mitigates the linking of circumstantial evidence as to his guilt. Petitioner believes the sufficiency review by the 9th Court of Appeals was inadequate when they failed to give proper consideration to his claims as to the sufficiency of evidence herein. Petitioner believes the Court was hasty in its assessment with this issue.

49

Petitioner requests review of the following: The Court of Appeals' application of law on the issues of: (1) what constitutes sufficient evidence of online solicitation of a minor? (2) what constitutes sufficient evidence of attempted sexual assault of a child? (3) Using acceptable methods of review, how is there a level of sufficiency in this case absent the impact from the admission of the grossly prejudicial testimony of a witness that insinuated extraneous incidents had occurred? (4) how does this judicial travesty goes without remedy legal remedy?

C. Petitioner believes the Court of Appeals erred when it failed to find harm, worthy of legal remedy, for the following egregious mistakes of the trial court (1) that the trial court erred when it denied, in part, the motion in limine with regard to allowing E.B. to be referred to as a "victim". Petitioner also believes the Court of Appeals erred (2) when it failed to give due consideration to the argument that the trial court should have excluded evidence that the State failed to timely produce in discovery and that the trial court acted in error (3) by its allowance of prejudicial testimony as to an alleged extraneous act, over defense objection. Appellant believes these error amounts to significant harm and resulted in his conviction for the said offenses.

Petitioner requests review of the following: The Court of Appeals' application of law on the issues of: (1) did the State's reference to E.B. as a "victim" amount to harmful error? (2) did the trial court abuse its discretion by failing to exclude evidence that was turned over to the defense within ten days of trial? (3) did the trial court's failure to exclude the questionable evidence deny the Petitioner his right to a fair trial? (4) did the trial court allow the jury to become unduly prejudiced by the admission of an unfounded, alleged extraneous act of the Petitioner?

## PRAYERS FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Petitioner respectfully prays that the Court of Criminal Appeals grant discretionary review of the appellate judgment below and, upon review, orders an acquittal of Petitioner as to the charge of online solicitation of a minor and attempted sexual assault of a child and any such further relief to which he may be justly entitled.

Respectfully Submitted,

Ruben Franco, Jr.
The Law Office of Ruben Franco, Jr.
406 North Thompson Street, Suite 204
Conroe, Texas 77301
Tel: (936) 441-0204
Fax: (936) 494-4316
State Bar No. 24040928
ATTORNEY FOR PETITIONER

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing petition was served upon the following via the method of service indicated below, on this the ___ day of September, 2015.


VIA HAND DELIVERY
Montgomery County District Attorney

VIA CERTIFIED MAIL
State Prosecuting Attorney
P.O. Box 12405
Austin, Texas 78711


RUBEN FRANCO, JR.
Attorney for Petitioner

53

CAUSE NO. PD-0972-15

---

IN THE COURT OF CRIMINAL APPEALS FOR THE STATE OF TEXAS

BRANDON CHADWICK COE

PETITIONER

V.

THE STATE OF TEXAS

---

Petition in

Trial Cause Number 11-11-12628-CR from the 221ST District Court of Montgomery County, Texas and Cause Number 09-13-00409-CR, Cause Number 09-13-00410-CR in the Court of Appeals for the 9th District of Texas

---

APPENDIX

EXHIBIT ONE: COPY OF 9TH COURT OF APPEALS OPINION

54

In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-13-00409-CR
NO. 09-13-00410-CR
_____

**BRANDON CHADWICK COE, Appellant**

V.

**THE STATE OF TEXAS, Appellee**

_____

**On Appeal from the 221st District Court
Montgomery County, Texas
Trial Cause No. 11-11-12628 CR (Count 1 and Count 2)**
_____

**MEMORANDUM OPINION**

Brandon Chadwick Coe appeals his convictions for online solicitation of a

minor and attempted sexual assault of a child. *See* Tex. Penal Code Ann. §§ 15.01,

33.021(c) (West 2011). He raises three issues on appeal.[1] We affirm the trial

court's judgment.

_____

[1]We note that Coe's issues are multifarious. *See Davis v. State*, 329 S.W.3d
798, 803 (Tex. Crim. App. 2010) (explaining that a multifarious issue is one that
embraces more than one legal theory). By combining more than one contention in

1

# I. Background

A grand jury returned a two-count indictment against Coe charging him with online solicitation of a minor (Count I) and criminal attempt (Count II). *See id.* §§ 15.01, 33.021. Coe pled not guilty to both offenses. A jury found Coe guilty as charged in both counts, and assessed punishment in Count I at imprisonment for twelve years and a $10,000 fine, and assessed punishment in Count II at imprisonment for ten years and a $10,000 fine. The trial court entered judgment in accordance with the jury's verdicts. Coe timely appealed the trial court's judgments.[2]

## II. Constitutionality of Section 33.021

In his first issue, Coe complains that Count I of the indictment is unconstitutional. Coe contends that in Count I, he was indicted for third-degree

---

a single point of error, Coe risks denial on the ground that the issue is multifarious and presents nothing for review. *See Mays v. State*, 318 S.W.3d 368, 385 (Tex. Crim. App. 2010); *Sparkman v. State*, 55 S.W.3d 625, 630-31 (Tex. App.—Tyler 2000, no pet.). In the interest of justice, we will consider multifarious issues to the extent we are able to identify Coe's complaints with reasonable certainty and those complaints are adequately briefed. *See Prihoda v. State*, 352 S.W.3d 796, 801 (Tex. App.—San Antonio 2011, pet. ref'd); *Stults v. State*, 23 S.W.3d 198, 205 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd).

[2]Both Coe and the State consolidated Cause No. 09-13-00409-CR and Cause No. 09-13-00410-CR for briefing purposes. Because the briefs and arguments raised in both causes are identical, they may be considered in one opinion.

2

felony online solicitation of a minor. According to Coe, because section 33.021(c) is not punishable as a third-degree felony offense, we must infer that the State's intent was to indict Coe under section 33.021(b), which the Texas Court of Criminal Appeals deemed unconstitutional in *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013).[3]

Texas Penal Code section 33.021(c) provides that a person commits an offense under this section:

> if the person, over the Internet, by electronic mail or text message or other electronic message service or system, or through a commercial online service, knowingly solicits a minor to meet another person, including the actor, with the intent that the minor will engage in sexual contact, sexual intercourse, or deviate sexual intercourse with the actor or another person.

Tex. Penal Code Ann. § 33.021(c). An offense under subsection (c) is a second-degree felony. *Id.* § 33.021(f). The indictment alleged that Coe "did then and there, with the intent that E.B., a minor, would engage in sexual contact and sexual intercourse with the defendant knowingly solicit over the [I]nternet and through a commercial online service (Facebook) the said E.B. to meet the defendant[.]" As Coe notes, the caption of the indictment classified Coe's offense as a third-degree

---

[3]In *Ex parte Lo*, the Texas Court of Criminal Appeals held Section 33.021(b) of the Texas Penal Code was unconstitutionally "overbroad because it prohibits a wide array of constitutionally protected speech and is not narrowly drawn to achieve only the legitimate objective of protecting children from sexual abuse." 424 S.W.3d 10, 14 (Tex. Crim. App. 2013).

felony. However, the caption of an indictment is not part of the charging instrument. *Adams v. State*, 222 S.W.3d 37, 52-53 (Tex. App.—Austin 2005, pet. ref'd); *Gonzalez v. State*, 664 S.W.2d 797, 799 (Tex. App.—Corpus Christi 1984), *rev'd on other grounds*, No. 263-84 (Tex. Crim. App. July 18, 1984) (not designated for publication). Here, because the body of the indictment alleges an offense under subsection (c) of section 33.021 and not an offense under subsection (b), the fact that the caption references a third-degree felony is of no consequence. We overrule Coe's first issue to the extent he alleges Count I of the indictment was unconstitutional because he was indicted under section 33.021(b), which has been found to be unconstitutional.

Coe argues in the alternative that section 33.021(c) is also an unconstitutional infringement of his First Amendment right to free speech, specifically, his right to fantasy speech. According to Coe, his words were protected by the First Amendment because his words were not directed to producing imminent lawless action and were not solicitation. He contends that when section 33.021(c) and (d) are combined, they explicitly criminalize fantasy speech, which he argues is protected by the First Amendment. The State responds that Coe did not challenge the constitutionality of section 33.021(c) on those grounds at trial and, thus, has not preserved this issue for review.

4

Constitutional challenges to a statute are generally forfeited by failure to object at trial. *Curry v. State*, 910 S.W.2d 490, 496 & n.2 (Tex. Crim. App. 1995); *see also Mendez v. State*, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004). A party must challenge the constitutionality of a statute as applied in the trial court to preserve error. *Flores v. State*, 245 S.W.3d 432, 437 n.14 (Tex. Crim. App. 2008); *Curry*, 910 S.W.2d at 496. Likewise, a party may not raise for the first time on appeal a facial challenge to the constitutionality of a statute. *Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009). The objection made in the trial court must comport with the argument presented on appeal. *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *Lovill v. State*, 319 S.W.3d 687, 691-92 (Tex. Crim. App. 2009). In determining whether a complaint on appeal comports with that made at trial, we consider the context in which the complaint was made and the parties' shared understanding at that time. *Clark*, 365 S.W.3d at 339.

Coe relies on *Ex parte Chance*, 439 S.W.3d 918 (Tex. Crim. App. 2014) (per curiam), for the proposition that he may raise a facial challenge to the constitutionality of a statute for the first time on appeal. However, as Justice Cochran's concurrence explained in *Ex Parte Chance*, the party in *Chance* had requested relief for a conviction under a statute the court had previously declared unconstitutional. *Id.* at 918, 922 (Cochran, J., concurring). Justice Cochran

5

distinguished that scenario from a situation in which a party is challenging a valid statute, or a statute that had not been declared void. *Id.* at 922 (Cochran, J., concurring). Neither subsection (c) or (d) of section 33.021 has been declared unconstitutional. Because Coe has challenged only valid sections of the statute, his reliance on *Ex parte Chance* for the proposition he need not raise his challenge in the trial court is misplaced.

Having determined that Coe was required to first raise his challenge in the trial court to preserve it for appellate review, we next determine whether he made an objection at trial that comports with the issue being asserted on appeal. During Coe's motion for directed verdict, Coe objected that section 33.021 is unconstitutional because it fails to give fair notice and it is impermissibly vague. The trial court overruled Coe's motion for directed verdict and overruled Coe's objections to the constitutionality of the statute. Coe filed a motion for new trial and motion in arrest of judgment, arguing only that the verdict is contrary to the law and evidence under Texas Rule of Appellate Procedure 21.3. Coe's motion for new trial did not argue the constitutionality of section 33.021. Coe's motion for new trial and motion in arrest of judgment were overruled by operation of law.

Coe's objection at trial that the statute does not provide fair notice and is impermissibly vague does not comport with his argument on appeal that the statute

violates his First Amendment right to free speech. We conclude Coe has not properly preserved his challenge to the constitutionality of section 33.021(c) for review in this appeal. Even if such argument had been preserved, this Court and others have analyzed and rejected the constitutional challenge Coe attempts to raise, and we see nothing in this record or Coe's argument that would compel us not to follow that precedent in this case. *See Ex parte Zavala*, 421 S.W.3d 227, 231-32 (Tex. App.—San Antonio 2013, pet. ref'd); *Maloney v. State*, 294 S.W.3d 613, 625-29 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd); *Ex parte Victorick*, No. 09-13-00551-CR, 2014 WL 2152129, at *1-6 (Tex. App.—Beaumont May 21, 2014, pet. ref'd) (mem. op., not designated for publication). We overrule Coe's first issue.

## III. Sufficiency of the Evidence

In his second issue, Coe contends the evidence is factually insufficient to support his conviction for online solicitation of a minor and attempted sexual assault of a child.

### A. Standard of Review

The "*Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove

beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In assessing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 899.

The jury is the sole judge of the credibility and weight to be attached to the testimony of witnesses. *Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014) (citing *Jackson*, 443 U.S. at 319). We give full deference to the jury's responsibility to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). If the record contains conflicting inferences, we presume the jury resolved such conflicts in favor of the verdict and defer to that resolution. *Thomas*, 444 S.W.3d at 8. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

## B. Online Solicitation of a Minor

Coe asserts that there is no evidence that he engaged in sexually explicit communications with E.B.'s sister while E.B.'s sister was posing as E.B., a minor, on Facebook. He maintains that because the indictment did not charge him with communicating with E.B. through text messages or over G-chat,[4] to affirm his conviction we must find that his Facebook communications alone were sexually explicit. Alternatively, he argues that if we conclude the indictment extended to the G-chat communications, the State also had the burden to show those communications were sexually explicit.

At the outset, we note the majority of Coe's sufficiency argument is based on his contention that he was indicted under subpart (b) of Section 33.021. However, as we discussed above, the indictment clearly charges Coe with a violation of subpart (c) of the statute. In reviewing the plain language of subpart (c), we note that it does not require "sexually explicit communications." *See* Tex. Penal Code Ann. § 33.021(c). Rather, it requires a person to solicit a minor "over the Internet, by electronic mail or text message or other electronic message service or system, or through a commercial online service[.]" *Id.* As we explained in *Ex*

---

[4]To the extent Coe attempts to argue in his brief to this Court that the trial court erred in admitting records of the conversations that took place over G-chat, we do not address such argument as Coe has not adequately supported the issue with record references or case citations. *See* Tex. R. App. P. 38.1(i).

9

*parte Victorick*, "'[s]olicit' is not defined in section 33.021 of the Texas Penal Code, and can be understood by the jury by its commonly defined terms, which include, 'to approach with a request or plea' and 'to endeavor to obtain by asking or pleading[.]'" 453 S.W.3d 5, 15 (Tex. App.—Beaumont 2014, pet. ref'd) (quoting WEBSTER'S THIRD NEW INT'L DICTIONARY 2169 (2002)).

The indictment alleged that Coe knowingly solicited E.B. "over the [I]nternet and through a commercial online service (Facebook)[.]" Despite Coe's argument to the contrary, alleging in the conjunctive that Coe solicited E.B. "over the [I]nternet" and "through a commercial online service (Facebook)" does not require the State to prove that Coe did both. *See Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991) (holding that "although the indictment may allege the differing methods of committing the offense in the conjunctive, it is proper for the jury to be charged in the disjunctive"). Therefore, the evidence is sufficient to support the jury's verdict that Coe was guilty of online solicitation of a minor if the jury could have found beyond a reasonable doubt that Coe knowingly solicited E.B., a minor, over the Internet to meet with him or another person with the intent that E.B. would engage in sexual contact, sexual intercourse, or deviate sexual intercourse with him or another person. *See id.*; *see also* Tex. Penal Code Ann. § 33.021(c).

E.B. was sixteen years of age on the date of the alleged offenses. She testified that she knew Coe and his family. She grew up around the Coe family and on occasion had lunch with them. In 2011, Coe and his father helped E.B. and her mom move into a new apartment. She testified that Coe made her feel uncomfortable and awkward during the move because of how Coe would look at her.

E.B. testified that she had been "friends" with Coe on Facebook for some time and had become "friends" well before August 2011. Coe made her feel awkward when he placed a comment that she "looked cute" on one of the pictures she posted of herself on Facebook. She told her sister about the comment, so E.B.'s sister started checking E.B.'s Facebook page.

The testimony offered by E.B.'s sister corroborated E.B.'s testimony. E.B.'s sister testified she became concerned for her younger sister, E.B., then sixteen years of age, when she noticed that Coe, a thirty-five-year-old man, was showing an "abnormal" or "excessive" level of interest in E.B.'s pictures on Facebook. The State admitted into evidence a Facebook chat log that E.B.'s sister identified as a conversation that she, under the persona of E.B., conducted with Coe. E.B.'s sister testified that she sent out a group message from E.B.'s Facebook account to Coe and eight other people. The message stated, "'So I am sending a message to all my

11

friends. What is it you-all like and don't like about me? How do we know each other? Do we have any secrets?'" Coe responded to the message within minutes. E.B.'s sister described the initial conversation between Coe and herself and then testified that Coe sent a message to E.B. asking, "'What are you up to, cutie?'"

The following day, E.B.'s sister sent a text message to the cell phone number Coe had provided to her during the Facebook chat. Photographs of the text conversation were admitted into evidence. Coe asked E.B. to send him a picture of herself, so E.B.'s sister sent him a picture of E.B. E.B.'s sister testified in detail regarding the content of the text messages exchanged between herself, posing as E.B., and Coe. She exchanged various photographs with Coe throughout the conversation. After she sent one certain photograph that she represented was E.B. lying next to a swimming pool, Coe responded that he would "like to see everything[.]" Coe also sent E.B. a text message that he would "love to be [her] first[.]"

The photographs of the text messages reflect that Coe offered to send E.B. a picture of his sexual organs, but that E.B. would have to send him pictures of her first because he had "a lot more at stake[.]" The evidence also reflects that Coe warned E.B. that she would need to delete any photographs he sent her because he could get in "big trouble[.]" E.B.'s sister testified that she sent Coe two

12

photographs of random nude females she found on the Internet and told Coe they were pictures of E.B. E.B.'s sister testified that Coe responded that he liked what he saw in the photographs. Coe responded by sending a photograph of his sexual organ. According to E.B.'s sister, Coe then described in graphic detail what he wanted to do sexually.

Coe later sent a text message indicating that he discovered the legal age of consent in Texas was seventeen years and told her that it was not illegal for them to be together after all. E.B.'s sister testified that up until that point in time, they had not discussed E.B.'s actual age. Coe sent a text message that he was ready to get together with E.B. whenever she was ready and that he looked forward to seeing her soon.

E.B.'s sister testified that Coe sent another text to E.B. wanting E.B. to come over to his house. During the conversation, she informed Coe that E.B. was just sixteen years old. Coe responded that he could get in "real big trouble and go to jail" if they did anything before E.B. turned seventeen years old.

Posing as E.B. again, her sister exchanged chats with Coe on Facebook . Coe sent E.B. a message through Facebook to tell her that she could call or text him if she wanted. Coe ended the conversation by stating that he could not wait to hear E.B.'s voice and see her in person. Copies of these exchanges were admitted

13

before the jury. E.B.'s sister testified that she also had conversations with Coe through Google email and chat. Copies of such exchanges were admitted before the jury. From all of her exchanges with Coe, E.B.'s sister became concerned for E.B's safety and decided to contact law enforcement.

E.B.'s sister testified that she had known Coe and his family for over fifteen years and their families had been friends and attended church together. She had also known Coe's ex-wife for many years and used her as a babysitter. E.B.'s sister testified that when the conversations with Coe began, she spoke with Coe's ex-wife concerning the conversations. She denied that she and Coe's ex-wife made any plan to set up Coe. On cross-examination, E.B.'s sister stated that Coe's ex-wife did make a comment to her about Coe which caused her to be concerned about Coe's apparent interest in E.B.

E.B.'s sister agreed on cross-examination that she is adept at photography but denied tampering with any of the photographs of the chat conversations entered into evidence. Defense counsel also questioned E.B.'s sister about thirty-nine missing images mentioned in the forensic report of the text messages between her and Coe captured on E.B.'s sister's phone. It was explained that those images were personal pictures of her and her son and were not images of her conversations with Coe.

Chris Smith, chief investigator with the Montgomery County District Attorney's Office, testified he received a report from the F.B.I. regarding an adult's on-line communication with a minor. He testified that E.B.'s sister made a complaint to the F.B.I. about online communications involving E.B. After meeting with E.B.'s sister, he made a plan to take over the identity of the minor child, E.B., and continue the online communications. E.B.'s mother provided Smith with permission to access E.B.'s Facebook and Gmail accounts.

Smith testified that he began accessing E.B.'s Gmail account on October 14. He identified a series of emails between him, posing as E.B., and Coe. Smith testified and the evidence reflects that Smith sent Coe an email from E.B.'s Gmail account and Coe responded and provided his cell phone number and requested her to contact him by texting. Smith confirmed that the number Coe provided in the email was actually Coe's cell phone number. Smith captured parts of the on-line chat conversations and emails exchanged with Coe, and the printouts of those exchanges were admitted into evidence for the jury to consider. Based on Smith's investigation and having reviewed the prior messages between Coe and E.B., it was Smith's opinion that Coe continued to solicit the minor for sexual relations.

Coe asked where E.B.'s sister lived so that he could obtain a map to her house. Coe confirmed again that E.B. would be alone at her sister's house that

15

night. Coe then asked E.B. when she would have her next birthday. Coe confirmed that E.B. was still sixteen and would turn seventeen years old the following Wednesday. Coe continued his on-line sexual banter. The conversation continued:

> Brandon: ... so when would you want me to come oveR?
> ....
> Brandon: ...That wouldn't be what it is to me I think you would be really cool to be your first
> me: does this mean I have a date for tonight? really feeling sick right this second (lol)...
> Brandon: Lol If you want one
> me: u r kind of making me feel like u dont want to have sex with me. if u don't, just tell me...I feel like u r playing games with me.
> ....
> Brandon: I wanna be with you if you want
> ....
> me: if u don't want to, I understand.
> Brandon: I do
> me: so r u coming tonight?
> Brandon: If you still want me to.

Smith testified that the conversation ended about 3:37 p.m. At this point, Smith started setting up a location to meet Coe. Smith testified that, posing as E.B., he initiated further communication with Coe later that night at 7:13 p.m. Smith testified that he sent Coe the address of the location they had prepared for Coe. Coe confirmed that E.B. was alone at the address. Smith testified that he exchanged various messages with Coe throughout the night. Smith also testified that Coe attempted to call the house at the address Smith had given him. When no one answered, Coe became suspicious that his ex-wife was attempting to set him

16

up and pose as E.B. to cause him trouble. Smith was able to convince Coe to keep the rendezvous that night. Again, the jury was able to view the transcript of the verbal exchanges with Coe.

Coe continued to try to arrange to speak to E.B. on the telephone before arriving at the address. Coe confirmed whether E.B. still wanted to see him and confirmed directions to E.B.'s sister's house. Posing as E.B., Smith expressed concern that Coe would be disappointed because she did not know what she was doing. Coe responded, "Sweet that's part of it's being your first. You really don't have to worry about anything[.]" Coe confirmed that he was on his way and asked E.B. what she was wearing and if she would come outside to greet him.

At 12:04 a.m., Coe sent a message indicating he had arrived at the house. Smith testified that a vehicle pulled up to the location and Coe exited the vehicle and began walking towards the house. Smith testified that he exited the house and made contact with Coe and placed Coe under arrest. Smith testified that when they arrested Coe, he was in possession of a cell phone, wallet, car keys, and five condoms. Smith testified that when they made an inventory of Coe's vehicle, they located an additional condom and a prescription bottle of Cialis. Smith testified that the bottle of Cialis was prescribed to Coe.

17

Defense counsel questioned Smith at length regarding the practices he used in his investigation and criticized him for not subpoenaing the entirety of the conversations from the on-line providers. Smith admitted that if someone has the motive, knowledge, and intent, it was possible for that person to make an innocent person appear guilty of an offense. He also agreed that photographs of Facebook and online chats could be altered. He conceded that while he is able to subpoena records from Internet service providers and phone companies, he did not subpoena chat or email records from Google concerning Coe's activities. Smith testified there were other complaints against Coe specifically regarding the misuse of his position at the church to spy on teenage female members of the church.

Coe's ex-wife testified that in June 2011, she turned over several computer hard drives to the Montgomery County police department that she had obtained from her and Coe's home. She told law enforcement that she suspected they contained pornographic images. However, it was her understanding that the hard drives revealed "nothing of any kind of evidentiary nature[.]"

Chris Juneau, an elder in the church Coe attended, was called to testify on behalf of Coe. Juneau is also E.B.'s uncle. He testified that no one from the church had complained to him about Coe's behavior. When E.B.'s sister spoke to him about Coe's actions, he took the matter before the elder board of the church, and

18

they watched Coe more closely. He testified that he never observed any inappropriate behavior between Coe and E.B. at church and E.B. had never complained directly to him about Coe. He was certain that if Coe had behaved inappropriately at church, he would have been aware of it.

The jury was allowed to view the explicit details of the content of the on-line conversations between Coe and the person he believed to be an under-aged teen, as was this Court in our review. There was ample evidence from which a jury could reasonably infer that Coe solicited E.B. and arrived at the designated meeting place with the intent that she would engage in sexual contact. When viewing the evidence in a light most favorable to the verdict, we conclude a rational trier of fact could have found beyond a reasonable doubt that Coe, through the Internet, knowingly solicited E.B., a sixteen-year-old child, to meet him with the intent that she would engage in sexual contact, sexual intercourse, or deviate sexual intercourse with him. *See* Tex. Penal Code Ann. § 33.021(c).

## C. Attempted Sexual Assault of a Child

Coe also challenges the sufficiency of the evidence supporting his conviction for attempted sexual assault of a minor. Specifically, Coe contends the State did not prove he traveled to the residence with the intent to commit a crime.

A person commits the offense of attempted sexual assault of a child if, with the specific intent to sexually assault a child, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the intended offense. *See* Tex. Penal Code Ann. §§ 15.01(a), 22.011(a)(2). The indictment alleged that Coe "travel[ed] to a predetermined location with the intent to engage in sexual intercourse with E.B., amounting to more than mere preparation that tended to but failed to effect the commission of said offense[.]"

In this case, the State produced transcripts of numerous online conversations that Coe had with E.B., a person whom Coe believed was a sixteen-year-old girl. The conversations that Coe had over Gmail chat and through text messaging were undisputedly of an explicit sexual nature. Also admitted into evidence was a photograph that Coe sent to E.B. revealing his sexual organ. From the content of the conversations and photographs, the jury could reasonably infer that Coe had the specific intent to engage in sexual intercourse with the child whom he believed to be E.B.

Coe arrived at the agreed-upon location. Officers found five condoms in Coe's front pocket and a bottle of Cialis in his vehicle. When considering these items in the context of the other evidence in the case, the jury could reasonably infer that this act was further evidence of Coe's intent to engage in sexual

20

intercourse with someone whom he believed to be a sixteen-year-old child. *See Hall v. State*, 124 S.W.3d 246, 252 (Tex. App.—San Antonio 2003, pet. ref'd). When viewing the evidence in the light most favorable to the verdict, we conclude that the State proved beyond a reasonable doubt that Coe had the specific intent to commit the offense of sexual assault of a child, and that he committed an act amounting to more than mere preparation that tended but failed to effect the commission of the offense. We overrule Coe's challenge to the sufficiency of the evidence to support his conviction for attempted sexual assault of a child.

## IV. Evidentiary Issues

Coe asserts that certain evidentiary rulings made by the trial court during the trial resulted in the rendition of an improper verdict. We review a trial court's ruling on the admission of evidence for an abuse of discretion. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). We will not reverse the trial court's decision if it is within the zone of reasonable disagreement. *Id*. We will not disturb a trial court's evidentiary ruling if it is correct on any theory of law applicable to that ruling. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

### A. Admissibility of the Testimony of Coe's Ex-Wife

In his second issue, Coe contends the trial court erred in limiting defense counsel's cross-examination of Coe's ex-wife regarding Coe's allegation that his

ex-wife had set him up.[5] Coe was prohibited from questioning his ex-wife regarding a previous attempt by her to lure Coe into an on-line conversation while posing as an under-aged female. Assuming, without deciding, that the trial court erred in restricting Coe's examination of his ex-wife, we determine any error was harmless.

The erroneous admission or exclusion of evidence is generally reviewed under the standard for nonconstitutional error contained in Rule 44.2(b) of the Texas Rules of Appellate Procedure if the trial court's ruling merely offends the rules of evidence. *Melgar v. State*, 236 S.W.3d 302, 308 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd); *see also Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001). The erroneous exclusion of evidence can rise to the level of constitutional error when the excluded evidence "forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense." *Potier v. State*, 68 S.W.3d 657, 665 (Tex. Crim. App. 2002). The exclusion of testimony that could only "'incrementally'" further the defendant's theory is not constitutional error; however, the exclusion of testimony that "'goes to the heart of

---

[5]In the point heading of Coe's third issue, he argues the trial court erred when it "refused defense requests for affirmative defenses in the jury charge, over defense objection." However, we note the body of Coe's third issue does not coincide with the argument raised in his point heading. We only address the issues presented and adequately briefed in the body of Coe's appellate brief.

the defense'" is constitutional error. *Wilson v. State*, 451 S.W.3d 880, 886-87 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (quoting *Ray v. State*, 178 S.W.3d 833, 836 (Tex. Crim. App. 2005) and *Wiley v. State*, 74 S.W.3d 399, 405 (Tex. Crim. App. 2002)).

Through the cross-examination of E.B.'s sister, Coe was able to present his argument that E.B.'s sister and Coe's ex-wife had a close relationship and that E.B.'s sister had spoken to Coe's ex-wife about the conversations she had with Coe. Through the testimony of E.B.'s sister and Smith, Coe was able to present his argument that E.B.'s sister could have altered the text messages and Facebook printouts that she turned over to law enforcement. Through Smith's testimony and the Gmail printouts, Coe was able to make his argument that at some point he considered that he was being set up by his ex-wife and E.B.'s sister. While the excluded testimony may have been relevant to Coe's defense that he lacked the requisite intent, that he was aware that he was being set-up by his ex-wife and E.B.'s sister, the exclusion of the testimony of Coe's ex-wife did not preclude Coe from presenting his theory before the jury. The excluded testimony could have only incrementally furthered such theory. For this reason, the error, if any, was not of constitutional dimension. *See Potier*, 68 S.W.3d at 666.

Under Rule 44.2(b), we may not overturn a criminal conviction for non-constitutional error if, after examining the record as a whole, we have fair assurance that the error did not have a substantial and injurious effect or influence in determining the jury's verdict. *Casey v. State*, 215 S.W.3d 870, 885 (Tex. Crim. App. 2007). Defense counsel conducted a voir dire examination of Coe's ex-wife. During the examination, Coe's ex-wife testified that she and Coe separated on May 23, 2011. She admitted that after her separation she assumed the online persona of "Nikki69Marie," a sixteen or seventeen year old. She testified she later spoke to Smith about her online chats with Coe as "Nikki69Marie." Coe's ex-wife denied that she attempted to set Coe up on the current charges.

After examining the record, we have fair assurance that the exclusion of the testimony of Coe's ex-wife, as reflected in Coe's bill of exception, did not have a substantial or injurious effect or influence in determining the jury's verdict. To the extent the excluded evidence lends some support to Coe's defensive theory, there was ample evidence to support the jury's verdict. We conclude that error, if any, in the exclusion of the complained-of evidence was harmless. We overrule Coe's issue regarding the exclusion of the testimony of Coe's ex-wife.

## B. Photographs Depicting Text Message Conversation on the Cell Phone of E.B.'s Sister

Coe contends the trial court erred in admitting photographs taken of E.B.'s sister's cell phone depicting a text message conversation between Coe and E.B.'s sister, who was posing as E.B. Coe argues the photographs were not properly authenticated.

The issue of authentication arises when "'the relevancy of any evidence depends upon its identity, source, or connection with a particular person, place, thing, or event.'" *Campbell v. State*, 382 S.W.3d 545, 548-49 (Tex. App.—Austin 2012, no pet.) (quoting *Shea v. State*, 167 S.W.3d 98, 104 (Tex. App.—Waco 2005, pet. ref'd)). "Evidence has no relevance if it is not authentically what its proponent claims it to be." *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012). Rule 901(a) of the Texas Rules of Evidence provides that for a party to satisfy the requirement of authenticating or identifying an item of evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Tex. R. Evid. 901(a). Rule 901(b) includes a list of evidence that satisfies this requirement, including testimony that an item is what it is claimed to be and evidence of the "appearance, contents, substance, internal

patterns, or other distinctive characteristics of the item, taken together with all the circumstances." *Id.* 901(b).

The ultimate question of whether an item of evidence is what its proponent claims it to be is a question for the factfinder. *Tienda*, 358 S.W.3d at 638. In performing its gate-keeping function, the trial court need only decide "whether the proponent of the evidence has supplied facts that are sufficient to support a reasonable jury determination that the evidence he has proffered is authentic." *Id.* Courts have admitted printouts of emails, Internet chat room dialogues, and text messages into evidence when the courts have found the printouts to be sufficiently linked to the purported author so as to justify the submission to the jury for its ultimate determination of authenticity. *Id.* at 639; *see also Campbell*, 382 S.W.3d at 549.

E.B.'s sister identified the photographs of text messages made and received between her personal cell phone and Coe's cell phone on August 11 and August 12. She testified that she took the photographs of the conversation and placed them on a flash drive. She testified that she knew the conversation was with Coe because she sent the message to the number he provided her through Facebook. Smith testified that the number Coe provided through Facebook was actually Coe's cell phone number. The events surrounding the messages sent to E.B.'s sister indicate

26

circumstantially that Coe was the author of the text messages. *See Tienda*, 358 S.W.3d at 641. When considered in combination with other circumstantial evidence in the record and the fact that Coe arrived in person at the designated place and time and announced his arrival by the same cellphone number, we hold a reasonable factfinder could have believed the text messages were created and sent by Coe. *See* Tex. R. Evid. 901(b)(1), (4). The factfinder was entitled to assess the weight to give Coe's defensive conspiracy and alteration theories once the State had produced a prima facie showing that the text and chat messages were created and sent by Coe.

Coe also argues the photographs do not satisfy the best evidence rule. Coe essentially argues that the best evidence would have been the actual cell phone of E.B.'s sister and not photographs of the conversation. Coe contends that he made a number of objections to the admission of the text messages "in the spirit of the best evidence rule[.]" Coe has not directed us to any part of the appellate record wherein he claims to have made these objections. Our review of the record indicates that Coe made a number of objections to the admission of the photographs: (1) he argued the photographs were not properly authenticated, (2) he argued the photographs did not reflect the entirety of the text conversation Coe had

with E.B.'s sister, (3) he argued the photographs had been altered, and (4) he argued the photographs were not relevant or material to the issues in the case.

Generally, to prove the contents of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided by the Rules of Evidence or by other law. Tex. R. Evid. 1002. "A duplicate is admissible to the same extent as the original unless a question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Tex. R. Evid. 1003. An original is not required, and other evidence of the content of a writing, recording, or photograph is admissible, if the original is: (1) lost or destroyed; (2) not obtainable by judicial process; (3) located outside the state; (4) in possession or control of the opponent; or (5) not closely related to a controlling issue. *See* Tex. R. Evid. 1004.

We find no support for Coe's contention that he made a best evidence or Rule 1002 objection to the photographs of the text messages contained on E.B.'s sister's cell phone. The record reflects that the trial court ordered the State to provide Coe's counsel access to the cell phones in the State's possession. The record further supports that the State complied with the trial court's order and gave Coe's counsel access to the cell phones and an opportunity to review the contents therein. Coe never raised an objection or concern to the trial court regarding the

authenticity of the data contained on the cell phones. Coe's counsel never asked the trial court to admit any cell phone into evidence. Coe did not argue, as he now attempts on appeal, that the cell phone is the best evidence of the text messages exchanged between Coe and E.B.'s sister. We find Coe has not preserved this issue for review. *See* Tex. R. App. P. 33.1(a); *see also Clark*, 365 S.W.3d at 339; *Lovill*, 319 S.W.3d at 691-92.

## C. Photographs Depicting Facebook Conversation

In his second issue, Coe contends the trial court erred in admitting photographs taken of E.B.'s sister's computer screen depicting the Facebook conversation between Coe and E.B.'s sister, who was posing as E.B, because the photographs appear altered and were not properly authenticated.

At trial, the State argued that authentication was complete because there are identifying factors that suggest the Facebook account belonged to Coe, including that it contained his picture, his name, that E.B. had been friends with him on Facebook, and that E.B. knows Coe and his family. The court found the Facebook photographs admissible.

Regarding the Facebook photographs, E.B.'s sister testified that she was familiar with them. She testified that she took the photographs of the conversation as it occurred and then saved the photos onto the computer. She testified that she

29

had sent out the initial group message from E.B.'s account and that Coe responded to that message. E.B.'s sister testified that she believed Coe was the person that responded because the responses had his picture and name on them. E.B.'s sister denied altering any of the photographs.

We note that the content of the messages at issue purport to be messages sent from a Facebook account bearing Coe's name. In this case, the internal content of the Facebook postings—photographs, comments and friends list—was sufficient circumstantial evidence such that a reasonable juror could have found that the messages were authored and sent by Coe. *See Tienda*, 358 S.W.3d at 642. The messages contain internal characteristics that further tend to connect Coe as the author. First, the messages contain Coe's image. Second, the messages contain a reference to attending church with E.B. Finally, and most persuasive, the author of the messages sent E.B. a cell phone number which proved to be Coe's number. We conclude that the combination of facts in this case is sufficient to support a finding that the Facebook messages were created by and sent from Coe. We conclude the trial court did not err in admitting these messages.

**D. Screenshots Depicting Gmail Chat**

In his second issue, Coe also contends the trial court erred in admitting the screenshots depicting the Gmail chat between Coe and Smith because the

30

screenshots do not capture the full conversation. Coe also contends the trial court erred in admitting evidence that was not timely produced. We will address this argument regarding the screenshots under the standards of *Brady v. Maryland*. *See Brady v. Maryland*, 373 U.S. 83 (1963).

To establish reversible error under *Brady*, a defendant must satisfy a three-pronged test. *Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002). The defendant must show (1) the State failed to disclose evidence (regardless of the prosecutor's good or bad faith); (2) the withheld evidence is favorable to the defendant; and (3) the evidence is material, i.e., there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different. *Id.*

During the hearing regarding Coe's *Brady* challenge, Smith testified that he captured the Gmail chat he had with Coe using the screen capture function on his computer. He testified that during his Gmail chat session with Coe, he had a computer problem that prevented him from either obtaining or saving particular screenshots of the conversation. As a result of this problem, some of the chat logs were lost. He explained that when he realized there was a problem, he attempted to preserve the conversation by using an iPad device, but that he never received the pictures he took with that device and the iPad was ultimately lost. He recalled that

31

part of the messages that were lost included a message where Coe indicated he would bring protection with him so that E.B. would not get pregnant. Smith testified that he did not intentionally fail to obtain the complete chat session, nor did he take the screenshots and then get rid of them. Smith explained that he was multitasking while he was capturing the images of the chat—he was in the middle of a chat session, trying to take screenshots as the chat was scrolling in real time down the screen, and trying to save each screenshot with a different file name and number. He explained that because of the nature of what he was doing, it was possible that the text on the screen rolled too fast for him to capture it and, as a result, he missed capturing a sentence or something in between the statements.

The trial court denied Coe's objection and, in so doing, explained that the argument that the Gmail chat session was incomplete went to the weight of the evidence and not to the admissibility. The trial court found that *Brady* was inapplicable because the State did not have possession of the missing portions of the Gmail chat session.

To the extent that Coe makes an argument on appeal that the State violated *Brady* in failing to produce the complete Gmail chat session, we conclude the record supports a finding that the State did not possess the missing portions of the Gmail chat session and thus, the trial court did not err in overruling Coe's *Brady*

32

objection. *See Harm v. State*, 183 S.W.3d 403, 407 (Tex. Crim. App. 2006) ("'*Brady* and its progeny do not require prosecuting authorities to disclose exculpatory information to defendants that the State does not have in its possession and that is not known to exist.'"). There can be no *Brady* violation without suppression of favorable evidence that actually exists. *Id.* at 406-07. Here, there is no evidence that the missing parts of the Gmail chat actually exist. We also overrule Coe's challenge to the completeness of the Gmail chat sessions, as incompleteness goes only to the weight, not the admissibility of the evidence. *See Robinson v. State*, 739 S.W.2d 795, 802 (Tex. Crim. App. 1987) (complaint that evidence is not accurate goes to weight and not admissibility). Accordingly, the trial court did not err in admitting the screenshots of the Gmail chat session.

## E. Admissibility of Evidence of Extraneous Acts

Coe contends the trial court erred in admitting testimony of other extraneous acts of Coe during the guilt-innocence phase of trial.[6] A trial court's decision to admit evidence of extraneous offenses will not be reversed absent a clear abuse of discretion. *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997). Rule

---

[6]Within this argument, Coe also indicates that the testimony should have been excluded because it was not properly authenticated and was inadmissible hearsay. Coe failed to adequately brief these arguments on appeal. *See* Tex. R. App. P. 38.1(i).

33

of Evidence 404(b) allows evidence of other crimes, wrongs, or acts if the evidence has relevance apart from character conformity. *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003). A defendant can "open the door" to the admission of otherwise inadmissible extraneous-offense evidence to rebut a defensive theory. *See Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008) (holding that defense counsel's opening statement can open the door to admission of extraneous-offense evidence to rebut a defensive theory raised in opening statement). "[A] party who 'opens the door' to otherwise inadmissible evidence risks the adverse effect of having that evidence admitted." *Bowley v. State*, 310 S.W.3d 431, 435 (Tex. Crim. App. 2010).

During Coe's case in chief, he called Smith as a witness. Coe's counsel asked Smith whether Coe had a pattern or history of inappropriate sexual behavior. Smith testified that he did not know Coe's total prior history. In response to direct questions posed by Coe's counsel, Smith testified that he had no knowledge that Coe had any prior convictions for solicitation of prostitution, child pornography, voyeurism, or any sort of sexually-based crime.

Coe objected when the State sought to cross-examine Smith regarding other communications Coe had had with underage females. The trial court overruled Coe's objection, finding that Coe's counsel opened the door to this testimony

34

during counsel's direct examination of Smith. The trial court ruled that the State could question Smith in a very limited manner to directly controvert testimony elicited by Coe's counsel.

Smith testified that he was aware of specific instances that he would consider inappropriate sexual behavior with a minor. Smith testified that he was aware of messages Coe sent to someone that Coe met on a "hook-up site" in October 2011, where Coe acknowledged in the message that the recipient of his message was fifteen years old. Smith testified that the messages included a conversation wherein Coe asked the minor if she "want[ed] to try things[.]" We hold that the trial court could have reasonably concluded that, through his questioning of Smith, Coe opened the door to testimony concerning his extraneous inappropriate sexual behavior. *See Bowley*, 310 S.W.3d at 435; *Bass*, 270 S.W.3d at 563.

Coe argues that any probative value of the testimony was substantially outweighed by its prejudicial effect. While the evidence was prejudicial to Coe, that alone is insufficient to exclude otherwise relevant evidence. *See Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013). Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice,

35

NO. PD-0972-15

| STATE OF TEXAS | § | IN THE |
| VS. | § | |
| | § | COURT OF CRIMINAL |
| BRANDON CHADWICK COE | § | APPEALS OF TEXAS |

## NOTICE OF COMPLAINCE WITH TRAP 9.412

## TO THE HONORABLE JUSTICES OF SAID COURT:

Now comes Brandon Chadwick Coe , Appellant in the above styled and numbered cause, and provides this Court with notice of compliance with Texas Rules of Appellate Procedure 9.412, and for good cause shows the following:

1.    The appellant's brief in this cause is 10,641 words long and therefore complies with the new statute.

2.    The brief was timely filed.

**WHEREFORE, PREMISES CONSIDERED,** Appellant prays that this Court accept the brief as filed herein.

Respectfully submitted,

RUBEN FRANCO, JR.
406 N Thompson Suite 204
Conroe, TX 77301
936-441-0204 Ph
936-494-4316 Fx
By: _____
RUBEN FRANCO, JR.
State Bar No. 24040928

## CERTIFICATE OF SERVICE

This is to certify that on September 9, 2015, a true and correct copy of the above and foregoing document was served on the District Attorney's Office, Montgomery County, by certified mail, return receipt requested.

RUBEN FRANCO, JR.

Print this page

# Case # PD-0972-15

## Case Information

| | |
|---|---|
| Location | Court Of Criminal Appeals |
| Date Filed | 09/09/2015 03:01:31 PM |
| Case Number | PD-0972-15 |
| Case Description | |
| Assigned to Judge | |
| Attorney | Ruben Franco, Jr. |
| Firm Name | Law Office of Ruben Franco, Jr. |
| Filed By | Ruben Franco, Jr. |
| Filer Type | Not Applicable |

## Fees

| | |
|---|---|
| Convenience Fee | $0.00 |
| Total Court Case Fees | $0.00 |
| Total Court Filing Fees | $0.00 |
| Total Court Service Fees | $0.00 |
| Total Filing & Service Fees | $0.00 |
| Total Service Tax Fees | $0.00 |
| Total Provider Service Fees | $0.00 |
| Total Provider Tax Fees | $0.00 |
| Grand Total | $0.00 |

## Payment

| | |
|---|---|
| Account Name | LAW OFFICE OF RUBEN FRANCO JR |
| Transaction Amount | $0.00 |
| Transaction Response | |
| Transaction ID | 11222992 |
| Order # | 006849617-0 |

## Petition for Discretionary Review

| | |
|---|---|
| Filing Type | EFileAndServe |
| Filing Code | Petition for Discretionary Review |
| Filing Description | Petition For Discretionary Review |
| Reference Number | Brandon Chadwick Coe |
| Comments | |
| Status | Rejected |

## Fees

| | |
|---|---|
| Court Fee | $0.00 |
| Service Fee | $0.00 |

## Rejection Information

| Rejection Reason | Time | Rejection Comment |
|---|---|---|
| | | The petition for discretionary review does not contain a certification in compliance with T.R.A.P. 9.4(i)(3); the certificate indicates that the petition contains 10,641 |

| Other | 09/14/2015 11:34:07 AM | words exceeding the limit of 4500 words. The petition for discretionary review does not contain the identity of Judge, Parties and Counsel [Rule 68.4(a)]. The petition for discretionary review does not contain a complete copy of the court of appeals opinion [Rule 68.4(j)]. You have ten days to tender a corrected petition for discretionary review. |

## Documents

| *Lead Document* | Coe, Brandon Chadwick Petition For Discretionary Review 9.9.15.pdf [Original] |

## eService Details

| Name/Email | Firm | Service Type | Status | Served | Date/Time Opened |
|---|---|---|---|---|---|
| Ruben Franco, Jr ruben@francolawoffice.com | Law Office of Ruben Franco, Jr. | EServe | Sent | Yes | Not Opened |
| Dawn E Kotalik dawn@francolawoffice.com | Ruben Franco, Jr | EServe | Error | No | Not Opened |
| jeana Kirk Jeana@francolawoffice.com | The Law office Of Ruben Franco Jr. | EServe | Error | No | Not Opened |